MAX L. BIEGERT AND THELMA BIEGERT, HUSBAND AND WIFE, AND BIEGERT BROTHERS FARMS, INC., A NEBRASKA CORPORATION, APPELLANTS, V. THELMA DUDGEON, NAOMI D. BETTY, AND WILLARD B. DUDGEON, APPELLEES.

330 N.W.2d 897

Filed March 4, 1983. No. 81-775.

Daniel E. Bryan of Heinisch & Bryan, for appellants.

Koenig & Murray, for appellees.

KRIVOSHA, C.J., BOSLAUGH, MCCOWN, WHITE, HASTINGS, and CAPORALE, JJ., and MORAN, D.J.

KRIVOSHA, C.J.

This is an action instituted by the appellants, Max Biegert, Thelma Biegert, and Biegert Brothers

Farms, Inc. (Biegerts), seeking to establish a prescriptive easement over a 30-foot strip of land owned by the appellees, Thelma Dudgeon, Naomi D. Betty, and Willard B. Dudgeon (Dudgeons), for the use of planting, harvesting, and caring for crops. Biegerts also sought an order requiring the Dudgeons to remove a fence constructed by the Dudgeons in such a manner as to prevent the Biegerts from coming upon the land over which the easement was being sought, and a permanent injunction to prevent future interference with the use of the land. The trial court sustained a motion to dismiss made by the Dudgeons and, following the overruling of a motion for new trial, the Biegerts appealed to this court. Their principal assignment of error is that the trial court erred in failing to find that they had established a prescriptive easement over the strip of land in question for use as a turnrow. We believe that the Biegerts are correct and therefore reverse the decision of the trial court.

The evidence discloses that the Biegerts and the Dudgeons are record owners of adjacent tracts of land once owned by the parties' grandparents and thereafter acquired by each of them. The Biegerts own and operate a farm on the north half of the northwest quarter of Section 28, Township 5 North, Range 3 West of the 6th P.M., Fillmore County, Nebraska. The Dudgeons are the owners of the south half of the northwest quarter of Section 28, Township 5 North, Range 3 West of the 6th P.M., Fillmore County, Nebraska. Prior to 1979 neither party knew where the exact boundary line was located between the north and south portions of the northwest quarter in question. The only visible division between the two tracts prior to this time was a well-defined drainage ditch approximately 20 feet in width. The ditch, which began at the west boundary line, ran in an east-west direction across approximately two-thirds of the quarter section, at which point it turned in a northeasterly direction. The division line which

extended to the eastern line of the northwest quarter from the point where the ditch turned to the northeast was a strip of land equal in width to the drainage ditch. Both the drainage ditch and the strip of land were used as turnrows.

The evidence is without dispute that the Biegerts and their tenants had used the ditch and strip of land as turnrows continuously since at least 1957, and well in excess of 10 years. The Biegerts or their tenants would plant crops to the northern edges of the ditch and strip of land and then turn their equipment in the ditch or on the strip of land.

On November 7, 1979, the Dudgeons had their farm surveyed and determined the exact location of the northern boundary. Based upon this survey, they erected a barbed wire fence on the boundary line between their farm and the land owned by the Biegerts. The fence was constructed on a line parallel to and approximately 10 feet north of the northern edge of the ditch and strip of land in question, thus preventing the Biegerts from using the ditch and adjacent strip of land as turnrows. The testimony of Dudgeons' tenant, Paul Row, established that the use of the area as turnrows by the Biegerts was of such a nature and frequency as to give notice to the Dudgeons. It was further undisputed that the drainage ditch and accompanying strip were used solely as turnrows since at least 1957 and were used by no one other than the Biegerts or their tenant for more than 10 years prior to 1970, when Row also began using the area to turn around. The evidence clearly established that, prior to the survey conducted in 1979, the true boundary line between the two tracts was unknown and that the Biegerts used the land in question under the belief that they were using their own land. One of the appellees, Naomi Betty, specifically testified that the Biegerts were never given permission to use the strip of land as a turnrow.

This being an equity action, it is the duty of this

court to try the issues of fact de novo on the record and to reach an independent conclusion thereon without reference to the findings made by the District Court. Neb. Rev. Stat. § 25-1925 (Reissue 1979); *Sturm v. Mau,* 209 Neb. 865, 312 N.W.2d 272 (1981); *Weiss v. Meyer,* 208 Neb. 429, 303 N.W.2d 765 (1981). The question therefore presented to this court is whether we can find from the evidence that the Biegerts have established their right to a prescriptive easement over the 30 feet in question. We are not unmindful of the fact that in reaching our conclusion we are bound by the rule that a prescriptive right is not looked upon with favor and, generally, must be proved by clear, convincing, and satisfactory evidence. *Hengen v. Hengen,* 211 Neb. 276, 318 N.W.2d 269 (1982); *Sturm v. Mau, supra.* Further, in order to establish a prescriptive easement, the individual making the claim must prove substantially the same elements as are required for one to establish a claim of right by adverse possession. That is, the party claiming a prescriptive right to an easement must prove that his use and enjoyment was adverse, under a claim of right, continuous and uninterrupted, open and notorious, and exclusive for the full prescriptive period. *Masid v. First State Bank, ante* p. 431, 329 N.W.2d 560 (1983); *Svoboda v. Johnson,* 204 Neb. 57, 281 N.W.2d 892 (1979).

We have previously held that a use is adverse and under a claim of right if the claimant proves uninterrupted and open use for the necessary period without evidence to explain how the use began. Once this presumption is established, it will prevail unless the owner of the subservient estate is able to show by a preponderance of the evidence that the use was by license, agreement, or permission. *Svoboda v. Johnson, supra; Fischer v. Grinsbergs,* 198 Neb. 329, 252 N.W.2d 619 (1977). This the Dudgeons were unable to do. The evidence further established that the use of the land by Biegerts was

continuous and uninterrupted for more than 10 years, having begun sometime in 1955. That it was not used each day is of no moment. We have previously addressed that issue in *Weiss v. Meyer,* 208 Neb. 429, 433, 303 N.W.2d 765, 768 (1981), when we said: "The law does not require that possession shall be evidenced by a complete enclosure, nor by persons remaining continuously upon the land and constantly from day to day performing acts of ownership thereon. It is sufficient if the land is used continuously for the purposes to which it may be in its nature adapted. [Citations omitted.]" As the evidence disclosed, the 30-foot area in question was used whenever it was necessary for the Biegerts to bring their equipment upon the land and to turn around.

Certainly, no one can argue from the evidence that the use was not open and notorious. It would be difficult to imagine how one would not observe the farm machinery being used on this land, and, as we have already noted, Dudgeons' tenant, Row, confirmed this fact. That the use was exclusive within the meaning of the law is likewise clear. The use of the ditch and adjoining strip was not dependent upon anyone else being present. In *Jurgensen v. Ainscow,* 155 Neb. 701, 710, 53 N.W.2d 196, 201 (1952), we said: "The term 'exclusive use,' however, does not mean that no one has used the driveway except the claimant of the easement. It simply means that his right to do so does not depend upon a similar right in others." And certainly the evidence established that the use was under a claim of right. Before the survey was taken there was a belief that the land in question was owned by the Biegerts. That they were mistaken in their belief is of no consequence. In *Weiss v. Meyer, supra* at 432-33, 303 N.W.2d at 768, we said: "The intent, even though mistaken, is sufficient as where the claimant occupies to the wrong line believing it to be the true line and even though he does not intend to claim more land than that

described in the deed. . . . It is the nature of the hostile possession that constitutes the warning [to the real owner], not the intent of the claimant when he takes possession.''

In summary, then, the Biegerts have, by clear, convincing, and satisfactory evidence, established that their use and enjoyment of the property in question was adverse, under a claim of right, continuous and uninterrupted, open and notorious, and exclusive for the full prescriptive period. Having established all of the necessary elements of their cause of action by clear, convincing, and satisfactory evidence, they were entitled to have a prescriptive easement over the 30-foot area in question established in their name. The decision of the trial court must therefore be reversed and the cause remanded with directions to enter judgment in favor of the Biegerts and against the Dudgeons in accordance with this opinion.

REVERSED AND REMANDED WITH DIRECTIONS.

MORAN, D.J., dissents.