Lester C. Sellentin and Mary A. Devlin,
appellees, v. Gilmore Terkildsen, appellant.

343 N.W.2d 895

Filed January 27, 1984.   No. 83-003.

Hurt, Gallant & Flores, for appellant.

Wallace Hopkins of Marks, Clare, Hopkins, Rauth & Cuddigan, and Joseph M. Dea and Diana Merkel, for appellees.

Krivosha, C.J., Boslaugh, White, Hastings, Caporale, Shanahan, and Grant, JJ.

Krivosha, C.J.

The appellant, Gilmore Terkildsen, appeals from a judgment entered by the district court for Dodge County, Nebraska, finding that the appellees, Lester

C. Sellentin and Mary A. Devlin (Sellentin-Devlin), have acquired a permanent easement over and upon the following-described land of Terkildsen, to wit, the west half of the northeast quarter, Section 3, Township 20 North, Range 6 East, of the 6th P.M., Dodge County, Nebraska. More particularly, the easement is described as being a certain well-defined trail, 20 feet in width, running around an old riverbed or oxbow lake from the west end of public roadway No. 109 on the east side of said lake to the old public roadway No. 109 on the boundary line between Cuming and Dodge Counties in Nebraska on the west side of said lake.

The order entered by the trial court, in addition to establishing the permanent public easement, enjoined Terkildsen from restraining or erecting any fence or other barrier so as to close or prevent the use by the traveling public of said easement, and further permanently enjoined and restrained Terkildsen from threatening the life or well-being of any persons using said easement, including Sellentin-Devlin. We have reviewed the record de novo as we are required to do in cases of this nature, *Biegert v. Dudgeon*, 213 Neb. 617, 330 N.W.2d 897 (1983), and have concluded that the judgment of the trial court should be affirmed.

Sellentin-Devlin owned land described as the south half of the southwest quarter of Section 34, Township 21 North, Range 6 East, of the 6th P.M., Cuming County, Nebraska. This land was located immediately north of the land owned by Terkildsen. The lands owned by each party or their predecessors in title abut public road No. 109. As originally dedicated, public road No. 109 ran straight east and west on the Dodge-Cuming county line. A bridge which was constructed over the Elkhorn River at the place where public road No. 109 reached the river was washed out in 1944. Furthermore, the Elkhorn River changed directions at this point, forming what is described in the record as the former river chan-

nel or as an "oxbow." The oxbow, located to the north of public road No. 109, crosses the county line, causing the public using the road to deviate from the dedicated path to get around the oxbow. This deviation is the path in question in this case. Eventually, the Elkhorn River was straightened and the oxbow became a lake. However, the oxbow continues to traverse across both the Sellentin-Devlin land on the north and the Terkildsen land on the south.

The single issue in this case is whether the public has acquired an easement across the Terkildsen land for purposes of getting around that portion of the oxbow that crosses former public roadway No. 109.

The record discloses that sometime in 1980 Terkildsen blocked the path by putting a cable across it. Sellentin-Devlin continued to use the roadway after it was cabled until about March of 1981, when a padlock was placed on the chain and cable, thereby closing off the road. Moreover, there is evidence that Terkildsen threatened Sellentin if he continued to use the roadway.

The record further discloses that on August 11, 1981, a portion of roadway No. 109 was vacated by an order of both Dodge and Cuming Counties. For our purposes, however, we need not consider that action.

It has long been recognized in this jurisdiction, as in others, that a highway may be established by prescription when used adversely by the public continuously for a period of 10 years or more. See, *Lancaster County, ex rel. Rosewell, v. Graham*, 120 Neb. 785, 235 N.W. 338 (1931); *Smith v. Bixby*, 196 Neb. 235, 242 N.W.2d 115 (1976). In order to establish the requisite public prescriptive easement, the public must show that the use and enjoyment of the land was exclusive, adverse, continuous, uninterrupted, open and notorious, and under a claim of right for the full 10-year prescriptive period. *Masid v. First State Bank*, 213 Neb. 431, 329 N.W.2d 560 (1983).

Furthermore, we have held that in order to establish a roadway in favor of the public by prescriptive easement, there must be a use by the general public under a claim of right adverse to the owner of the land of some particular defined line of travel, and the use must be uninterrupted and without substantial change for 10 years or more, the period of time necessary to bar an action to recover the land. *Sturm v. Mau*, 209 Neb. 865, 312 N.W.2d 272 (1981). Once a claimant shows open, visible, continuous, and unmolested use of the land for the necessary period, the use will be presumed to be under a claim of right, and once so established this presumption may be rebutted by the owner of the servient estate only by proving by a preponderance of the evidence that the use was by license, agreement, or permission. *Sturm v. Mau, supra*; *Biegert v. Dudgeon*, 213 Neb. 617, 330 N.W.2d 897 (1983). In the case of public roads the fact that only a few members of the public still use the road does not mean that the road has been abandoned. *Smith v. Bixby, supra*.

With those basic principles in mind we then review the record. While we do review the record de novo, we nevertheless keep in mind that where the evidence on material questions is in conflict, this court will consider the fact that the trial court observed the witnesses and their manner of testifying. *Baker v. Buglewicz*, 205 Neb. 656, 289 N.W.2d 519 (1980).

Although Terkildsen attempted to establish that the roadway had been long abandoned, several witnesses testified at the trial first with respect to the use of public roadway No. 109 and then with regard to the easement around the channel. The appellee Sellentin testified that he could recall using the road since he was a "kid." Sellentin specifically recalled that before the bridge was first washed out in 1944 the general public used public roadway No. 109; and he specifically recalled farmers west of the river hauling their grain and produce to elevators and markets on the east side of the river. He testified

further that after the bridge was washed out he continued to use the road to go hunting and fishing, traveling across the Terkildsen land to get around the river. He stated that he probably went fishing on an average of about once or twice a month and that there were other fishermen and hunters who also used this road and the deviation.

Raymond L. Still also testified. Still was a conservation officer with the Nebraska State Game and Parks Commission, a position which he has held since November 15, 1973. He stated that he became familiar with the area in question in January of 1974. Still used public roadway No. 109 for patrol purposes, though he occasionally used a private entrance belonging to Terkildsen to get to this area. Still checked the area for hunters, fishermen, trappers, and boaters, and, beginning in 1974, he saw hunters, fishermen, and trappers down by the river. Usually the people fished the oxbow, but Still stated that occasionally people would fish the river.

Furthermore, two more witnesses, Leland A. Diers and Leo Wortman, testified that they had lived in the area for many years and recalled the road being used by hunters, fishermen, and persons who camped there. They likewise testified that there was some deviation from the established roadway since at least 1944 when the bridge was washed out. The evidence further established that the public began driving on the Terkildsen hay meadow at least by 1958 or 1959, if not earlier.

We believe that the evidence in this case clearly and conclusively establishes that the general public, including the appellees, used roadway No. 109 and its deviation across Terkildsen's property for more than 10 years and that the use was open, visible, continuous, and unmolested. On that basis the public has clearly acquired the public easement granted to it by the trial court.

Appellant argues that either the use was with permission or was abandoned. As we have indicated,

the burden of establishing either of those defenses is upon Terkildsen in this case. See *Hopkins v. Hill*, 160 Neb. 29, 68 N.W.2d 678 (1955). We believe an examination of the evidence fails to disclose either the matter of permission or abandonment. For these reasons, therefore, the judgment of the district court granting the public an easement and enjoining Terkildsen from interfering with its use was correct. The judgment of the district court is affirmed.

AFFIRMED.