LOLA LEU, APPELLANT AND CROSS-APPELLEE, V. DALE LITTELL AND MARY LITTELL, HUSBAND AND WIFE, AND GRAYCE CLARK, APPELLEES AND CROSS-APPELLANTS.

513 N.W.2d 24

Filed December 14, 1993.   No. A-92-055.

Charles W. Baskins and Robert E. Roeder, of Baskins & Roeder, for appellant.

John A. Gale, of McCarthy, Gale & Moore, for appellees.

SIEVERS, Chief Judge, MILLER-LERMAN, Judge, and NORTON, District Judge, Retired.

PER CURIAM.

This lawsuit involves a "trail road" similar to the countless other unimproved and unmaintained roads which crisscross the Sandhills ranch country of Nebraska and allow travel from

ranch to ranch and to town for the people of this sparsely populated region of our state.

The plaintiff, Lola Leu, brought this action against the defendants, Grayce Clark and Clark's tenants, Dale and Mary Littell, to establish a public prescriptive easement across Clark's land. Leu also sought to permanently enjoin the defendants from placing obstructions on the public easement, to require the defendants to open certain gates across the trail road, and to further enjoin the defendants from interfering with the public's rights to use the trail road. Clark cross-petitioned, praying that Leu and all other persons be permanently enjoined from using the trail road in question for ingress, egress, or any other purpose, and to quiet title in Clark to 120 acres of land that is not directly connected to the trail road. The trial court found that Leu had established a private prescriptive easement across land belonging to Clark, but that a public prescriptive easement did not cross this land. The court also quieted title to the 120 acres of land in Clark. Leu appeals to this court, and the defendants cross-appeal.

Clark died while the case was pending in this court. The case was revived by Leu against Clark's estate and Clark's sole heir, Sandra L. Scholz.

## FACTS

Leu is a cattle rancher who maintains three separate ranches, which we will refer to as her "home ranch," the "Wooley ranch," and the "Tailholt ranch." Leu's home ranch and the Wooley ranch are separated from the Tailholt ranch by ranchland that was owned by Clark and known as the Frank Leu ranch. Leu and Clark were first cousins whose fathers previously ranched much of the land crossed by the trail road involved in this case. This trail road begins south of Leu's land where it meets a graded road. It meanders north across Leu's land, then across Clark's land, and then across Leu's land again for a few miles before it meets a maintained road. From the exhibits, we have constructed the diagram which appears herein and which should facilitate understanding of this case. Lola Leu's property extends north and south of that depicted in our diagram.

R31W

T8N

Tailholt
ranchstead

Sec.
6

Sec.
5

Frank Leu
ranchstead

Sec.
7

Sec.
8

Sec.
18

Sec.
17

Wooley ranch

North

- - - Trail road
Clark's property
Leu's property
Other property

Clark, who was about 81 years old at the time of the trial, was raised at the Frank Leu "ranchstead," and she acquired her land from her parents and her siblings after her parents' death. She rented her land to the Littells, who kept cattle on it.

A trail road (not shown on our diagram) proceeds northwest from the Tailholt ranchstead across Leu's land for a distance that is not disclosed by the evidence. However, the aerial photograph of the area, in evidence as exhibit 4, shows that this northwest trail road and the two segments leading east and southeast from the ranchstead (shown on our diagram) are the only means of access to the Tailholt ranchstead.

When Leu was a child, Leu's parents lived south of section 18, and Leu was raised there on her home ranch. The Wooley ranch, which is located in part in sections 17 and 18, is now owned by Leu. Until about 1940, it was owned by an aunt of Leu and Clark. The Tailholt ranch was not owned by a Leu family member until it was purchased by Leu's father in the late 1920's.

Leu testified that she has been personally familiar with the trail road for 70 years. She claimed that the trail road existed before her and Clark's time, that is, before 1911. Leu has been maintaining a livestock operation since 1935, and she stated that she has personally used the trail road when traveling to North Platte and Wellfleet and to check her water, livestock, and fences. Leu further testified that she uses the trail road in her livestock operation to move cattle to and from her separate ranches. Leu stated that she has used the trail road approximately two to three times per week for the last 35 years. Leu estimated that the width of the trail road is approximately 40 feet at its widest point.

Leu stated that over the last 50 or 60 years, she has also observed other persons using the trail road. Leu testified that people had been using the trail road to cross her land and Clark's land for more than 10 years. Leu also stated that several suppliers haul supplies over the trail road. She testified that she and Clark never discussed Leu's use of the trail road, nor did Leu discuss her use of the trail road with Clark's father. Leu stated that Clark never objected when Leu moved her cattle on the trail road across Clark's land.

Leu was married to Waldo Goedeker from 1959 until 1980. Goedeker leased the Frank Leu ranch from Clark's father and then from Clark. Leu denied operating any livestock business with Goedeker, although she did admit that she watered her cattle on Goedeker's land and installed a gate which allowed her to move cattle across sections of the Frank Leu ranch. When Leu and Goedeker were divorced in 1980, Goedeker continued to lease the Frank Leu ranch from Clark and subleased part of it to Leu until 1986. In 1987, Dale and Mary Littell leased the ranch from Clark and subleased it to Leu until 1989. Clark was not aware of either of these subleasing arrangements.

Clark testified that she used the trail road regularly when she was growing up. She used the trail road south of the Frank Leu ranchstead to travel to visit her aunt Marietta Wooley until at least 1932. She admitted the trail road was used by her immediate family to travel south to Hoyt City and Marengo, but said the route was later changed. The trail road was a means of getting south to the county road to go to Dickens and Hayes Center. Clark's family did not have relatives other than the Roy Leu family to the north, but Clark's family did use the trail road north when they went to North Platte. Clark stated that from 1921 until 1932, she was not aware of anyone other than family, including the Roy Leu family, using the trail road. She stated that when she was growing up, it was rare to see a car on the trail road.

Clark did not live on the ranchstead for any length of time after she left to attend college in 1932. She did remember auto gates being installed. On the portion of the trail road in question, there are four gates, which generally are located at the section lines and where the trail road crosses the Leu-Clark boundaries. Clark's parents moved off the ranch to North Platte in 1944.

Clark testified that she was not aware that Leu was subleasing the land from either Goedeker or the Littells. Clark testified that she was not aware of anyone using the trail road, but admitted that she did not know who had used the trail road since 1941 because she did not live on the ranch.

Leu called several witnesses to testify to their use and familiarity with the trail road. Melvin Shipman, a livestock

feedstore department manager, testified that he has been familiar with the trail road since 1979 and that he used the trail road to deliver feed to Leu and to Clark's tenants. Bill Rodgers is in the business of drilling and servicing water wells. He stated he has used the trail road on and off for approximately 25 years, both to get to Leu's ranches and to travel to other ranches in the area. James Griffiths testified that he has been familiar with the trail road since about 1941. He stated that he used the trail road to move cattle and to visit friends. He further testified that he had not traveled the trail road north of the Frank Leu ranch since 1966, and to the south since 1980.

Keith Lapp, a rancher, testified that he has moved cattle on the trail road since 1979 and that he also uses the trail road to haul "mineral" and to check his cattle's water. He testified that he has seen other ranchers moving cattle on this trail road.

Jerry Schultz works occasionally for Leu, but he has his own cattle. He testified that he has been familiar with the trail road since 1947 and that he moved cattle for Leu approximately 1 month prior to the trial. Schultz stated that he has used the trail road for personal reasons such as checking his cattle's water. Schultz testified that he has seen others using the trail road, including that portion on Clark's land.

All of the witnesses called by Leu testified that they have never asked anyone's permission to use the trail road, except that Lapp testified he asked for Dale Littell's permission in 1990 after Littell wired several gates closed on the trail road.

Clark called several witnesses to testify to the use of the trail road. Martin Viersen stated that he was familiar with the trail road, but testified that he had never actually used it, except that he had crossed the trail road with cattle two or three times. Leu had named several families who had allegedly used the trail road in the 1930's. Viersen testified that he did not believe that the families named by Leu had regularly used the trail road because it was located in a very isolated area. Viersen stated that he was not aware of any families in that area who had regularly used the trail road to move either cattle or vehicles during the period from the early 1900's to the 1940's. Lola Weesner testified that she grew up in Hayes County and that she and her immediate family used "a trail road" to get to Frank Leu's

property, but that she was not aware of any other relatives that frequently used the trail road.

Stanley Sellers, a rancher who worked for Leu in 1982 and 1983, testified that Leu kept cattle on Goedeker's leased land. Sellers used the trail road to travel from one part of Leu's land to another. Sellers stated that he had Leu's permission to use the trail road and also stated that he never saw anyone else using the trail road during the time that he worked for Leu. He further testified that Leu had told him that the trail road was private property and that she did not want others to use it.

Glen Stoetzel worked for Roy Leu on the Tailholt ranch every summer from 1951 through 1959. Stoetzel testified that he did not see very much traffic on the trail road and stated that the trail road was used mainly by neighbors. Stoetzel testified that he did not recall seeing Leu move cattle on the trail road, or that anyone other than those people who were pasturing on the Tailholt ranch moved cattle on the trail road.

Dale Littell, Clark's tenant at the time of this lawsuit, testified that in 1987 he leased land from Clark and then subleased the land to Leu. Littell stated that he continued to sublease to Leu for about 2 years, but that Clark was not aware of the arrangement between Leu and Littell. In 1990, Littell leased the land from Clark for his own cattle operation, and he continued to lease the land at the time of the trial. Littell stated that he goes on the land that he leases approximately two to three times per week during pasture season.

## TRIAL COURT'S DECISION

In June 1990, Littell, with permission from Clark, wired several gates on the trail road closed. In response, Leu initiated this lawsuit, praying that the court grant her, and the public generally, a prescriptive easement for the trail road and enjoin the defendants from interfering with the easement.

After a full trial, the court found on November 13, 1991, that "[t]he trail road involved herein has not been generally used by the public to the extent required to make the trail a public road." However, the court found that "[t]he trail road involved herein has been sufficiently used by the Plaintiff and her predecessors in title for more than seventy years which establishes an

easement by prescription." In its decree, as amended on December 27, the court ordered that Leu's easement consist of the right to occasional use by vehicles and farm machinery without prior notice by Leu to Clark and the Littells and that such use be granted to Leu and her agents, delivery people, and guests. The court also provided that Leu and her employees can occasionally drive cattle over the easement, subject to 36 hours' prior notice to Clark, her lessees, or her agents. The court ordered that the easement be 10 feet wide on either side of the centerline of the trail road. The court also held that where erosion has occurred, the users of the easement can bypass the eroded areas within a reasonable distance to protect the land and permit passage. The court enjoined Clark and the Littells from interfering with Leu's use of the easement. The court found that Leu had not established any other prescriptive easement rights across the land belonging to Clark. The court noted that Leu had admitted in open court that she was not claiming any land in excess of that shown to be hers in a government survey. The court then quieted title to the disputed 120 acres of land in Clark. The court noted that the course of the trail road across Clark's land was specifically described in Leu's second amended petition and that the 120 acres was specifically described in Clark's cross-petition.

## ASSIGNMENTS OF ERROR BY LEU

In her appeal to this court, Leu raises three assignments of error: (1) The court erred in finding that the trail road did not constitute a public road by prescription, (2) the court abused its discretion in denying the admission of exhibits 35 and 35-A, and (3) the court erred in quieting title in Clark to the disputed 120 acres.

Leu alleges that the court erred in denying the admission of exhibits 35 and 35-A. However, she does not discuss this error in her brief. To be considered by an appellate court, an error must be assigned and discussed in the brief of one claiming that prejudicial error has occurred. *Grote v. Meyers Land & Cattle Co.*, 240 Neb. 959, 485 N.W.2d 748 (1992); *State v. Melton*, 239 Neb. 576, 477 N.W.2d 154 (1991); *In re Interest of B.M.*, 239 Neb. 292, 475 N.W.2d 909 (1991). Therefore, we

will not consider the court's denial of the admission of exhibits 35 and 35-A.

## ASSIGNMENTS OF ERROR ON CROSS-APPEAL BY THE DEFENDANTS

In their cross-appeal to this court, the defendants allege two errors: (1) The court's finding that Leu had established a private prescriptive easement across Clark's lands was not sustained by the evidence, and (2) the court erred as a matter of law in finding a private prescriptive easement because Leu's pleadings prayed only for a public prescriptive easement.

## STANDARD OF REVIEW

■ In an appeal of an equity action, this court tries the factual questions de novo on the record and reaches a conclusion independent of the findings of the trial court, provided, where the credible evidence is in conflict on a material issue of fact, this court considers and may give weight to the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *Johnson v. City of Hastings*, 241 Neb. 291, 488 N.W.2d 20 (1992); *Dowd v. Board of Equal.*, 240 Neb. 437, 482 N.W.2d 583 (1992); *State v. Nebraska Assn. of Pub. Employees*, 239 Neb. 653, 477 N.W.2d 577 (1991).

## GENERAL FINDINGS OF FACT

On a de novo trial of the matter, we first observe that there is no dispute that a trail road has existed since at least before 1911 in approximately the same place as that trail road which Leu contends is a public road by prescription. Understandably, there is no direct evidence of anyone who remembered having traveled the road longer than Clark and Leu, and they both were about 81 years old at the time of the trial in 1991. The areas shown on various plat maps the parties introduced in evidence are displayed on maps prepared by the U.S. government. These basic plats contain usual symbols for an unimproved road, i.e., two dotted lines, at essentially the position that Leu contends is a public road. Such evidence does not show a public road, but the existence of such notations on publicly circulated material is relevant and tends to show that the public at least has notice the

trail road exists. The aerial photograph taken in 1985 clearly shows this same trail road twisting through an area that, from the top to the bottom of the photo, is roughly 5 miles long.

The aerial photo also shows that without the trail road, there is an area of at least 5 by 3 miles, and perhaps larger, that has virtually no access. Leu's and Clark's property is pasture and hayland, but approximately 1 mile to the east of the trail road, farming operations can be seen on the aerial map. The Tailholt, Frank Leu, and Wooley ranchsteads were on that trail road, presumably by at least 1911, and in order to get to or from the ranchsteads it was necessary to travel on at least part of the trail road. It is true that those living at the Tailholt ranchstead could have had access to their land to the northwest or the northeast, that the Frank Leu family could have gotten to town by going east, and that the Wooley family could have gotten to town by going south. But Clark admitted she traveled south on the trail road to visit the Wooley ranchstead and to go to Hayes Center and Marengo. She also testified that she traveled north on the trail road to go to North Platte. Roy Leu eventually acquired the Tailholt ranch, and his son occupied the Wooley ranch. The record is not completely clear as to how Leu acquired all the land she now owns, but members of the extended Leu family have not always owned all of this land.

The auto gates are of some significance. Clark did not recall specifically when they were installed, but stated that they were a great improvement in her view. However, there is testimony that some of the auto gates were in place for at least as long as 36 years. Ranchers do not build auto gates where they rarely travel. The evidence does not show who built the auto gates. A trail road that passes over an auto gate goes in two directions, which implies frequent use on both sides of the auto gate. It seems unlikely that anyone would build an auto gate merely to get into his or her neighbor's pasture. It is much more likely the auto gates were installed to permit ease of travel in crossing over to another place or places. For instance, if the auto gates between Clark's land and Leu's land were built by Frank Leu, it is a reasonable inference that his travel was frequent enough that he would want to avoid opening fence gates to cross over his brother's land. If Roy Leu built the auto gates, he

undoubtedly did so for the same reason, or perhaps it was a joint project. In any event, the auto gates allow the inference of frequent travel across the trail road by motor vehicles.

It is also significant that all of the witnesses were familiar with the trail road. Even those who never saw traffic upon it seemed to be familiar with where it was located. Clark and her witnesses tended to testify that there was very little traffic on the trail road. However, "very little traffic" and similar expressions are necessarily relative terms. Anyone familiar with travel in the Sandhills ranch country would expect travel on such a trail road to be very slight as compared to travel in more populated areas of the state.

## PUBLIC EASEMENT BY PRESCRIPTION

█ It has long been recognized in this jurisdiction that a highway may be established by prescription when used adversely by the public continuously for a period of 10 years or more. See, *Sellentin v. Terkildsen*, 216 Neb. 284, 343 N.W.2d 895 (1984); *Lancaster County, ex rel. Rosewell, v. Graham*, 120 Neb. 785, 235 N.W. 338 (1931). "In order to establish the requisite public prescriptive easement, the public must show that the use and enjoyment of the land was exclusive, adverse, continuous, uninterrupted, open and notorious, and under a claim of right for the full 10-year prescriptive period." *Sellentin*, 216 Neb. at 286, 343 N.W.2d at 897. Furthermore, "there must be a use by the general public under a claim of right adverse to the owner of the land of some particular defined line of travel, and the use must be uninterrupted and without substantial change for 10 years or more." *Id.* at 287, 343 N.W.2d at 897.

█ " 'To prove a prescriptive right to an easement, all the elements of prescriptive use must be generally established by clear, convincing, and satisfactory evidence. . . .' " *Svoboda v. Johnson*, 204 Neb. 57, 62, 281 N.W.2d 892, 897 (1979). The six elements which must be established are delineated in the following discussion:

█ First, continuous and uninterrupted use may be established by use of the easement "whenever there was any necessity to do so and with such frequency that the owner of the

servient estate would have been apprised of the right being claimed." *Id.* at 63, 281 N.W.2d at 897. In this case, Leu's evidence establishes that she used the trail road when it was necessary to go from south of Clark's property to Leu's land north of Clark's property. Leu and other witnesses established that the public traversed the trail road when there was reason to use it. Above all, there is no dispute that a clear trail road exists. The evidence established this element.

■ Second, the use must be "open and notorious so that the owner will learn of the use, assuming that he keeps himself informed about the condition of his property." (Emphasis omitted.) *Svoboda*, 204 Neb. at 63, 281 N.W.2d at 898. The well-established trail road would notify the owner that somebody was traveling not only across her land, but from her land in both directions. Significant parts of the trail road on Clark's land could have no purpose other than to get across her land to Leu's land. Apparently, Clark did not keep herself informed of the current use, but she did admit she knew and approved of the auto gates. The evidence established this element. Third, the use must be exclusive. As used in this connection, the word "exclusive" could be misunderstood. It does not mean that no one but the claimant uses the road. It simply means the claimant's right to use the property does not depend upon a similar right in others. *Svoboda, supra*. The fourth element is that the claimant's use of the prescriptive easement is under claim of right, and the fifth element is that the claimant's right must be adverse.

■ The following holding from *Svoboda*, however, is quite applicable to the situation here, where the use of the trail road predated the memories of the litigants who were in their eighties:

> [I]f a person proves uninterrupted and open use for the necessary period without evidence to explain how the use began, the presumption is raised that the use is adverse and under claim of right, and the burden is on the owner of the land to show that the use was by license, agreement, or permission. The presumption of adverse use and claim of right, when applicable, prevails unless it is overcome by a preponderance of the evidence.

(Emphasis omitted.) *Svoboda*, 204 Neb. at 66, 281 N.W.2d at 899.

Sixth, the assertion of a prescriptive easement may be defended against on the basis that the use was made by permission. To get to this sixth element, it is required that a claimant show open, visible, continuous, and unmolested use of the land for the necessary period, and the use will be presumed to be under a claim of right. Once so established, this presumption may be rebutted by the owner of the servient estate only by proving by a preponderance of the evidence that the use was by license, agreement, or permission. *Sturm v. Mau*, 209 Neb. 865, 312 N.W.2d 272 (1981).

Clark attempted to dispute Leu's evidence that use of the trail road was made by the public. However, the existence of so visible a trail road for so long a period makes Clark's challenge difficult to accept. The reality of the matter is that the trail road exists because it is used. In other words, the vehicle tracks in the sand which form the trail road are there because it is used. Use is the trail road's only maintenance.

The evidence in this case clearly shows there was open, visible, continuous, and unmolested use of the trail road for a period far exceeding 10 years. The burden to prove that the trail road's use was by permission clearly shifted to Clark. This is the element that encompasses the principal issue in this case. We must consider whether Clark introduced sufficient evidence to prove by a preponderance of the evidence that the use by the public was permissive.

Clark claimed to have not known about the use of the trail road. Obviously, this position made it difficult for the defendants to introduce direct evidence that the use was permissive. The defendants attempt to justify their position indirectly by two means: (1) by the fact that Clark and Leu, and their fathers before them, were blood relatives, and therefore the use was permissive, and (2) by the fact that Leu was a sublessee of Clark's land for a number of years, although this was unknown to Clark, and therefore Leu's use was as a tenant and not as an adverse claimant.

"As between parties sustaining parental and filial relations, the possession of the land of the one by the other

is presumed to be permissive, and not adverse. To make such possession adverse, there must be some open assertion of hostile title, other than mere possession, and knowledge thereof brought home to the owner of the land."

*Chase v. Lavelle,* 105 Neb. 796, 807, 181 N.W. 936, 940 (1921). This principle has been applied to relationships as distant as grandson and stepgrandmother, or between cousins. See *Petsch v. Widger,* 214 Neb. 390, 335 N.W.2d 254 (1983). This principle can be more correctly applied to an easement or adverse claim by one relative over land of another relative. If Leu claimed that only she had a private right to cross Clark's land on the trail road, the fact that Leu and Clark were relatives would perhaps point toward permissive use. However, the claim here is for public use.

The evidence shows that the trail road continues for several miles and connects on the north and south with maintained roads. The trail road was physically established by use when some of the land was owned by relatives and some was owned by others. We find there is no basis to hold the use was permissive on the theory that most of the land was owned by related people. Furthermore, to the extent that the evidence on adversity was conflicting, the trial court saw the witnesses testify. The trial court found the trail road was used by the plaintiff and her predecessors in interest for more than 70 years.

The fact that Leu was a sublessee of Clark's land for a number of years without Clark's knowledge has no bearing on the issue of whether Leu and others used the trail road with Clark's permission. Clark either knew or should have known that someone was making substantial use of the trail road, as it continues to exist and is plainly visible for all to see. Since Clark did not know that Leu was subleasing the real estate, Clark could hardly have maintained she was giving permission to Leu to use the trail road based upon a legal relationship of which she was not aware. Leu's sublease of Clark's land really has a bearing on the exclusiveness issue. However, in view of the evidence establishing substantial use before the existence of the sublease arrangement, it does not appear that Leu thought she was traveling on the trail road under her rights as a sublessee,

but traced her right of travel back long before she was a sublessee.

We therefore conclude that the defendants did not establish that the use by Leu and the public was permissive, and that Leu did establish a public prescriptive easement across Clark's land on the course described in the decree. The nature and extent of that easement will be discussed below. As the defendants correctly argue, Leu did not claim a private prescriptive easement in her second amended petition, and in the cross-appeal the defendants deny there is such an easement. We need not discuss the private prescriptive easement further, except to note that that part of the court's decree should be reversed, as we conclude that the easement is public.

### EXTENT OF THE EASEMENT

■ The nature and extent or scope of an easement must be clearly established. *Werner v. Schardt*, 222 Neb. 186, 382 N.W.2d 357 (1986).

> "The extent and nature of an easement is determined from the use made of the property during the prescriptive period. The width of a public highway acquired by prescription or dedication must be determined as a question of fact by the character and extent of the use or the amount dedicated to public use. * * * If the public has acquired the right to a highway by prescription, it is not limited in width to the actual beaten path but the right extends to such width as is reasonably necessary for public travel."

*Smith v. Bixby*, 196 Neb. 235, 239-40, 242 N.W.2d 115, 118-19 (1976).

The court granted Leu a private prescriptive easement over the established trail road and held that the right of way over the easement shall be 10 feet wide on either side of the centerline of the trail road. As to where erosion has occurred, the court granted Leu the prescriptive right to bypass the eroded areas within a reasonable distance to protect the land and to permit passage in accordance with the easement that it had granted.

We direct the court to modify the easement to allow for public use of the trail road. Accordingly, the public's right to use

the trail road is not limited to the actual beaten path, but extends to such width as is reasonably necessary for public travel, including a reasonable width to drive livestock. We likewise grant the public the prescriptive right to bypass the eroded areas within a reasonable distance. Generally, the cases involving prescriptive easements in the public do not prescribe specific rules for easement use. After all, by this action Leu has necessarily admitted that the trail road, which we find to be a prescriptive easement, continues in both directions across her own land and that it is public.

## QUIET TITLE

The court quieted title in Clark to 120 acres of land in dispute, more specifically described in the cross-petition of Clark and the Littells. The 120 acres in question lies between a parcel of land owned by Leu and a parcel of land that was owned by Clark. Clark contended that she had owned the described property from the time of her deed and that she continued to own it at the time of trial.

In her answer to Clark's counterclaim, Leu admitted that Clark owned the south half and northwest quarter of the southwest quarter of Section 6, Township 8 North, Range 31 West of the 6th P.M., in Hayes County, Nebraska, having acquired title to such property by deed. Leu further admitted that from 1954 until 1986, Clark and her predecessor in title leased the above-described 120 acres to Goedeker. Leu subleased this land from Goedeker and, later, from the Littells.

On appeal, Leu contends that Leu acquired title to the 120 acres by adverse possession. Leu maintains that Leu could only be divested of title by Leu's conveyance of the land in writing or by subsequent disseisin for the statutory period and that Leu could not lose title by Leu's acknowledgment of a recognition of title in Clark. The Nebraska Supreme Court has frequently stated that an issue not presented to or passed on by the trial court is not appropriate for consideration on appeal. *Wagner v. City of Omaha*, 236 Neb. 843, 464 N.W.2d 175 (1991); *Hensman v. Parsons*, 235 Neb. 872, 458 N.W.2d 199 (1990); *Beaver Lake Assn. v. Sorensen*, 231 Neb. 75, 434 N.W.2d 703 (1989). Thus, we refuse to consider Leu's claim that

she acquired title to the 120 acres in question by adverse possession, except to observe that with the existence of the lease and sublease, we have difficulty in understanding the basis for the claim. The trial court's judgment quieting title to the 120 acres in question is affirmed.

## CONCLUSION

We affirm that part of the trial court's judgment quieting title in Clark to the 120 acres in dispute. We reverse only that part of the trial court's judgment granting Leu a private prescriptive easement in the trail road across Clark's land, and we remand the cause with directions for the trial court to award a public prescriptive easement along the trail road in accordance with this opinion.

AFFIRMED IN PART, AND IN PART REVERSED
AND REMANDED WITH DIRECTIONS.