L.A. BREINER, APPELLANT, V.
HOLT COUNTY, NEBRASKA, ET AL., APPELLEES.
581 N.W.2d 89

Filed June 2, 1998.   No. A-97-554.

W. Craig Howell, of Domina Law, P.C., for appellant.

Daniel D. Jewell and Scott A. Gray, of Jewell, Collins & DeLay, for appellee Holt County.

MILLER-LERMAN, Chief Judge, and HANNON and IRWIN, Judges.

HANNON, Judge.

L.A. Breiner brought a declaratory judgment action seeking a declaration of the nonexistence of several roads in rural Holt

County which were adjacent to his land. Holt County (County) answered and alleged the roads were established as public roads by the action of the Holt County Board of Supervisors on December 18, 1925. Holt County counterclaimed, alleging Breiner's action was barred by the statute of limitations. At trial, the district court found that three of the trail roads claimed by the County to be public roads were roads by prescriptive easement. Breiner appeals only that part of the order which determined that such an easement existed for one of the three trail roads and alleges that the trial court erred in its findings. Upon a de novo review of the evidence, we find that the 2 miles of road in question were established as a road by a prescriptive easement through use by the public. We therefore affirm.

*Background Facts.*

The subject of this appeal is a trail road existing on the west line of Sections 19 and 30, Township 32 North, Range 14 West, in Holt County, Nebraska. There are many similar trail roads in the immediate area. The photographs in evidence show the land in the area of the trail roads to be from relatively flat to gently rolling grassland. Some of this land is used for pasture and some for hay production. Testimony establishes there are some irrigation systems southeast of the road, but the area is primarily devoted to ranching. Generally, these trail roads are two parallel tracks running near the surveyed section lines. Frequently, but not always, there is a fence or trees on one or both sides of the road creating the appearance of a right-of-way approximately 40 feet or more in width. Frequently, the landowners on either side run a fence across the trail road so they can utilize a fence on the far side of the road to keep their cattle in their pastures. Some land adjacent to the road is used to produce hay, and therefore, no fence is necessary. The photographs in evidence give no visual indication that any of the roads shown have ever been graded, graveled, or maintained. The photographs show vehicle tracks which are generally sodded over.

All the roads we are concerned with in this appeal are in Township 32 North, Range 14 or 15 West. Section 30, Range 14, is immediately north of Section 31; Section 19 is north of Section 30; and Sections 25 and 24 of Range 15 are west of

Sections 19 and 30. In an attempt to describe the trail roads with a minimum of words and maximum clarity, we shall call all of them simply roads, with each designated by its location from the adjacent section number. For example, "road-west-Section-30" refers to the trail road along the west side of Section 30.

Thomas Schaub, the Holt County surveyor since 1968 and the Holt County road superintendent since 1970, testified that his duties include supervising trail roads. (Schaub termed the roads "minimum maintenance roads.") Schaub testified that the county does no work upon such roads and that he checks them only randomly. To Schaub's knowledge, the County had never maintained the road involved in this action, and he had inspected it only as a result of the controversy that gave rise to this action.

There are no graded public roads within 1 mile of the southwest corner of Section 30, but there are trail roads going in each of the four directions of the compass from that point. There is a fence on each side and parallel to each of these roads except for a portion Breiner recently removed. Gates cross these roads at various points. We shall designate this fencing arrangement "double fencing," as did the parties at trial. In the trial below, the court determined road-south-Section-30 was a road by prescription, and that determination was not appealed. Schaub testified that this road extends east from the southeast corner of Section 30 for 1 mile, but that there is a gate across the road at that corner; that the surveyed corner of the southwest corner of Section 30 is in the approximate center of the two roads that intersect at that point; and that the road going north is about 30 feet east of where the fence used to be on the east side of Section 25 before Breiner removed it. At the northwest corner of Section 19, the survey corner was about 8 feet west of the fence line, which indicated the road veered slightly to the west. Schaub testified that the trail continued for another mile to an abandoned building site. Schaub testified that the soil in the area is light and granular and that if graded, it would blow away if not covered with clay.

Schaub testified a row of cedar trees commenced about 500 feet north of the southwest corner of Section 30 and east of the road-west-Section-30. The trees were parallel to the road and

about 60 to 70 feet east of where a north-south fence used to be on the east side of Section 25. The fence for the road-west-Section-19 was missing when Schaub last viewed the road.

Breiner has owned the south half and the northwest quarter of Section 30 since 1991 and also owns the east half of Section 25. Breiner leases the south half of Section 19. He maintains these roads are not public roads. Duane Beck owns the northwest quarter of Section 19. Beck maintains the road-west-Sections-19-and-30 is a public road. This disagreement appears to be the initial cause of this action.

Breiner, Beck, and the following individuals testified about their knowledge of the road and its use: Frank Kilmurry, age 82, who owns Section 24 as well as the section immediately north of it and who has ranched in the community for many years; Darrell Smith, whose family owns the northeast quarter of Section 19 and other land in the neighborhood; Clarence Focken, age 87, who lived on the southeast corner of Section 19 and ranched and farmed land on Section 30 and other land in the area for 47 years, ending in 1979; Garold Hitchcock, who lived and ranched in the area and had driven cattle on the road-west-Sections-19-and-30. These men testified about the roads in the area and their use by them and others. The significant testimony will be summarized later in this opinion.

After the trial, the court rendered a written opinion citing the applicable law, analyzing the evidence, and finding the County records do not establish the road was an open public road. The court found that Beck's testimony was clear and convincing and established a road by prescription on the west side of Sections 19 and 30. Accordingly, the court entered a declaratory judgment to that effect.

## ASSIGNMENT OF ERROR
Breiner alleges the trial court erred in finding the road-west-Sections-19-and-30 to be a public road by prescription.

## STANDARD OF REVIEW
An action to determine whether or not section lines are public roads is one in equity. *Spilinek v. Spilinek*, 212 Neb. 811, 326 N.W.2d 170 (1982). In reviewing an equity action for a declaratory judgment, an appellate court tries factual issues de

novo on the record and reaches a conclusion independent of the finding of the trial court, subject to the rule that where credible evidence is in conflict on material issues of fact, the reviewing court may consider and give weight to the fact the trial court observed the witnesses and accepted one version of the facts over another. *Hillary Corp. v. United States Cold Storage*, 250 Neb. 397, 550 N.W.2d 889 (1996).

## ANALYSIS

The trial court correctly recognized that the burden of proof rests upon the County to establish that (1) the necessary proceedings were had to establish and open the roads in question or (2) the roads in question were established by adverse possession or prescriptive easement. See, *County of Banner v. Young*, 184 Neb. 546, 169 N.W.2d 280 (1969); *Mosier v. Herman*, 113 Neb. 318, 202 N.W. 875 (1925). We shall consider these issues in the same order.

*Action of County Board.*

A county cannot, even under the applicable statute, open a section line road without giving notice to the landowner, giving the landowner a claim for damages, or appointing appraisers and making provisions for payment of the landowner's damages. Without such efforts, the county is a trespasser. *Olson v. Bonham*, 212 Neb. 548, 324 N.W.2d 260 (1982).

The record of the Holt County Board of Supervisors for October 31, 1925, shows that that body passed a resolution finding that the County had failed to make proper entries upon the road records of the County; that there were many roads which had been worked, graded, and bridged which were not in the records of the County; and that courts had recognized that the use of a road for 10 years or more made such roads public roads. The resolution instructed the County supervisors to furnish a list of all such roads in their respective districts that have existed for more than 10 years and to make an affidavit listing such roads. The record of the County contains separate affidavits by the six supervisors stating that certain listed roads in their districts have been used and traveled for more than 10 years. The roads are described as being on one of the four sides of a listed section, and hundreds of such roads are listed. All of

the affidavits were filed on or before December 18, 1925. On that day, a motion to declare the listed section line roads as public roads was passed, and among the roads listed on the affidavit was the road on the east line of Sections 24 and 25 (the same as the west line of Sections 19 and 30). This is the only record produced by the parties from which it could possibly be claimed that the road had been opened as a public road. By this procedure, the County clearly did not open the public road in any manner authorized by statute or due process.

■ Thus, the road exists, if at all, by virtue of a prescriptive easement acquired by adverse use by the public of the road in question. Where a public road has been established by proceedings under the applicable statute, and opened and traveled by the public for more than 10 years, the public thereby acquires an easement, and the court will not examine the original proceedings to determine if they were valid. *State ex rel. Draper v. Freese,* 147 Neb. 147, 22 N.W.2d 556 (1946).

The evidence from the County records establishes that for 70 years the County has claimed the road-west-Sections-19-and-30 as a public road by prescription. The County record by itself is not sufficient to establish a road by prescription, but gives some credence to the notion that the County, and hence the public, claimed the road was a public road and hence traveled it under claim of right. However, under the facts in this case, this evidence is probably not necessary.

*Road by Prescription.*

■ To establish a public prescriptive easement, the public must show that the use and enjoyment of the land was exclusive, adverse, continuous, uninterrupted, open and notorious, and under a claim of right for the full 10-year prescriptive period. *Sellentin v. Terkildsen,* 216 Neb. 284, 343 N.W.2d 895 (1984). See, also, *Leu v. Littell,* 2 Neb. App. 323, 513 N.W.2d 24 (1993). These elements must be established by clear, convincing, and satisfactory evidence. *Svoboda v. Johnson,* 204 Neb. 57, 281 N.W.2d 892 (1979).

■ Once the first five elements of a prescriptive easement are proved, there is a presumption that the use is under a claim of right, and this presumption can be rebutted by the owner of the

servient estate only by proving by a preponderance of the evidence that the use was by license, agreement, or permission. *Sellentin v. Terkildsen, supra.*

The evidence summarized above establishes without serious dispute that there is a clear trail consisting of two tracks on the section line west of Sections 30 and 19, that this road is almost identical in appearance to all of the other roads within at least a 1-mile distance from it, and that similar roads feed into and out of the road. Beck, Kilmurry, Smith, and Breiner himself could not get to their land unless they traveled on roads that adjoined and were quite similar to the road-west-Sections-30-and-19. Breiner, Smith, and Hitchcock all testified to having driven cattle on the road, and Smith and Hitchcock claimed not to have obtained permission. Beck's testimony established that he and others traveled the road whenever they had a reason to do so. Beck's testimony on the nature and extent of the roads' use is not really disputed.

The principal dispute is whether or not the road is traveled by the public. Breiner, Kilmurry, and Focken testified they have seen no people travel the road except hunters during hunting season and neighbors, including them. We realize that many landowners regard hunters as a nuisance and that some, but not all, hunters are in fact a nuisance but that in either case, hunters are members of the public. There was no evidence of any effort by local landowners to stop hunters from traveling on the trail road, nor is there any evidence the hunters' travel was part of trespasses by the hunters upon the private land adjacent to the trail roads. Evidence that only neighbors and hunters traveled the road establishes at least that neighbors and hunters did travel the road. In this case, the evidence shows that the neighbors referred to are not people who live in the area, but other people such as Beck, Smith, Kilmurry, and Breiner, who own land in the area. There is no evidence that the neighbors who used the road sought or received permission to travel the road. A fair summation of the evidence is that anyone who wanted to travel the road did so, but that not many persons wanted such travel. Considering the road is in an isolated ranching area, the infrequency and sporadic nature of travel upon it is not controlling.

Furthermore, the existence of worn tracks and ruts in the earth tends to establish there was considerable travel on the road sometime in the past. Focken testified these ruts were made before his time by people from "Dustin." (The evidence shows Dustin was a small town of undisclosed location.) Focken also testified that "old-timers" using wagons traveled the road.

Many years ago, Focken planted the cedar trees along the road, a distance east of the section line. By so locating the trees, Focken is admitting that someone had a right to travel on the line. Beck testified that once Focken had put gates across the road and that a man named "Crippen" raised so much "devil-ment" that Focken opened it up. Focken's testimony is not help-ful to Breiner because a study of his testimony would convince almost anyone that he had concluded "just a trail road" is not a road. The gentleman is mistaken.

Kilmurry recognized the trail road in an aerial photograph of the road-west-Section-19. Kilmurry testified he did not use the trail road, but that he goes a mile north and travels the road-north-Section-19 to get to his pasture. Kilmurry testified he and Breiner go right through Beck's northwest quarter of Section 19, but upon cross-examination, he admitted it was on the trail north along Beck's land. Kilmurry admitted he has used the road-west-Section-19 when the north way through Beck's land gets too wet.

The existence of fencing and trees set back approximately road right-of-way width has to be recognized as evidence that the landowners recognized the public's right to travel on the section line, as well as the landowners' desire to keep their live-stock off the road. The fact that these fences were in a line adja-cent to the trail for 2 or more miles likewise shows recognition by the landowners maintaining the fences that the fenced-off area is for public travel. The absence of a fence would tend to negate the existence of a public road, but in this case, the absence of some sections of fence on the same continuing fence line would not cause an observer to think that the public right to travel stops in the areas where the fence is missing.

Gates across a trail tend to negate the existence of the trail as a road, but when the evidence shows the gates are opened at will and left open, except in pasture season, such gates do not effec-

tively controvert the public's right to travel the clearly marked way between what appears to be private property.

The above analysis is made without direct reference to the six elements listed above, but was made with those elements in mind. To prevail, there must be clear and convincing evidence that the public's use was exclusive, adverse, continuous, uninterrupted, open and notorious, and under claim of right. The most difficult elements in establishing a road under these elements are whether the use was exclusive, continuous, and uninterrupted. This is so because viewing an individual member of the public's use of a road, that use cannot be exclusive, continuous, or uninterrupted.

For a use to be exclusive does not mean that no one but the claimant uses the road. Exclusive simply means the claimant's right to use the property does not depend upon a similar right in others. *Leu v. Littell*, 2 Neb. App. 323, 513 N.W.2d 24 (1993). A use is continuous and uninterrupted if it is established the easement was used whenever there was any necessity to do so and with such frequency that the owner of the servient estate would have been apprised of the right being claimed. *Svoboda v. Johnson*, 204 Neb. 57, 281 N.W.2d 892 (1979); *Leu v. Littell, supra.* A use is presumed to be adverse and under a claim of right if the use was uninterrupted and open for the necessary period. Evidence is not needed to explain how the use began, and the presumption prevails unless overcome by a preponderance of the evidence that the use was by license, agreement, or permission. *Svoboda v. Johnson, supra*; *Leu v. Littell, supra.*

The above elements are clearly established by the evidence of all of the witnesses that they observed that those using the road simply did so and that no one attempted to interfere with such travel. The evidence establishes public use back to at least the 1950's, and some of Focken's testimony would push that date back much further. In part, Beck's testimony is convincing because it has the effect of placing a road on Beck's land as well as on that of other owners of land adjacent to the road. Smith likewise establishes that he traveled the road thinking it was a public road and that his father taught him this attitude.

To establish a prescriptive easement, the use must be open and notorious so that the owner knew of the use, assuming

that he keeps himself informed about the conditions of his property. *Leu v. Littell, supra.* A well-established trail road would notify the owner that someone was traveling not only across his land, but from his land in both directions. *Id.* In the case of public roads, the fact that only a few members of the public still use the road does not mean that the road has been abandoned. *Sellentin v. Terkildsen,* 216 Neb. 284, 343 N.W.2d 895 (1984); *Smith v. Bixby,* 196 Neb. 235, 242 N.W.2d 115 (1976).

Breiner and Kilmurry testified that it is customary in the Sandhills for neighbors to use each other's trails as needed. Breiner testified that he freely allows neighbors to use section line trails. This testimony does not rebut the presumption that use under a claim of right arises upon proof that the land use was exclusive, adverse, continuous, uninterrupted, and open and notorious. See *Sellentin v. Terkildsen, supra.* In addition, Breiner did not own the property when the road would have been established, and he never testified that any hunter or neighbor ever sought permission to travel on the road. The record is rather clear that this action was precipitated by Breiner's interfering in some manner with what Beck regarded as his right to travel on the road. Interestingly, Breiner argues "it is understood in rural communities that everybody has [the right to use section line trails as] access to their property." There is no evidence supporting this assertion, and as properly understood, the right to use section line trails, if it exists, is an easement, public or otherwise. There is no evidence in this case of any private easement of access. Of significance is the fact that most of the witnesses in this case would have no access to their land if they did not travel over a road very much like the road-west-Sections-19-and-30. Focken's testimony that the road does not serve any noticeable purpose is simply wrong. Breiner's testimony that the road does not lead to any farmstead is contradicted by Schaub's testimony that the road terminates at an abandoned building site.

Breiner relies on the fact the County has never maintained the road. That public authorities have never assumed control of a road or repaired it is frequently an important, sometimes controlling, element. *Burk v. Diers,* 102 Neb. 721, 169 N.W. 263 (1918). But in this case, Schaub testified that such

roads are regarded as primitive, minimum-maintenance roads which the County does not maintain and that the conditions are such that the road cannot be graded unless clay is placed upon it. One witness testified that this requirement, plus low use, was prohibitive to grading. Thus, the lack of maintenance does not establish that the County does not claim the road is public, and a traveler need not assume that the lack of public maintenance is an indication that the road is not for public travel.

For these reasons, we affirm the trial court's order and find that the County has established an easement by prescription.

AFFIRMED.