Michael Gallner, as Personal Representative
of the Estate of Judy Hoffman, deceased,
and Jordan Gallner, individually and
as guardian and next friend of
Makenzie Gallner, appellants,
v. C. Gregg Larson, appellee.

___ N.W.2d ___

Filed June 26, 2015.    No. S-14-240.

1. **Actions: Conversion.** An action for conversion sounds in law.
2. **Appeal and Error.** A district court's factual determination in a bench trial in an action at law has the same effect as a jury verdict and will not be set aside unless clearly wrong.
3. **Actions: Trusts: Equity.** An action to impose a constructive trust sounds in equity.
4. ____: ____: ____. An action to establish an oral trust sounds in equity.
5. **Equity: Appeal and Error.** In an appeal of an equitable action, an appellate court tries factual questions de novo on the record, provided that where credible evidence is in conflict on a material issue of fact, the appellate court considers and may give weight to the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another.
6. **Trial: Evidence: Appeal and Error.** A trial court has the discretion to determine the relevancy and admissibility of evidence, and such determinations will not be disturbed on appeal unless they constitute an abuse of that discretion.
7. **Agency: Proof.** Where a fiduciary or confidential relationship exists between the parties to a transaction, the burden of proof is upon the party holding the fiduciary or confidential relationship to establish the fairness, adequacy, and equity of the transaction.
8. **Agency.** It is the duty of the fiduciary to fully inform the other party of all the facts relating to the subject matter of the transaction which

come to the knowledge of the fiduciary and which are material for the other party to know for the protection of that party's interest.

9. **Attorney and Client: Agency.** It is axiomatic that the relationship between attorney and client is a fiduciary or confidential one.

10. **Malpractice: Attorney and Client: Negligence: Proof: Proximate Cause: Damages.** In a civil action for legal malpractice, a plaintiff alleging professional negligence on the part of an attorney must prove three elements: (1) the attorney's employment, (2) the attorney's neglect of a reasonable duty, and (3) that such negligence resulted in and was the proximate cause of loss to the client.

Appeal from the District Court for Douglas County: Leigh Ann Retelsdorf, Judge. Affirmed.

Theodore R. Boecker, Jr., of Boecker Law, P.C., L.L.O., for appellants.

Joshua C. Dickinson and Shilee T. Mullin, of Spencer, Fane, Britt & Browne, L.L.P., for appellee.

Heavican, C.J., Wright, Connolly, Miller-Lerman, and Cassel, JJ.

Heavican, C.J.

## I. INTRODUCTION

Michael Gallner (Gallner) filed a complaint against C. Gregg Larson alleging breach of fiduciary duty arising out of the attorney-client relationship, breach of fiduciary duty arising out of the duty of a trustee, and conversion. Gallner sought either money damages or the imposition of an oral or constructive trust as to proceeds paid out to Larson as beneficiary of various life insurance policies following the death of Judy Hoffman (Judy).

The district court dismissed Gallner's claims and entered judgment in Larson's favor. Gallner appeals. We affirm.

## II. FACTUAL BACKGROUND

Gallner and Judy were married in 1982 and divorced in 1994. There was one son as a result of their marriage, Jordan Gallner. Jordan is the father of Makenzie Gallner.

Judy was a resident of Omaha, Nebraska, and an attorney licensed to practice law. She died intestate on December 10, 2007. Gallner was named personal representative of her estate.

The present litigation involves Larson, who was a friend of Judy's. Judy and Larson met in the early 1990's when both represented different defendants in a federal criminal case. Over the years, Larson assisted Judy in various legal matters, including continuing legal matters relating to her divorce from Gallner. Larson, who resides in another state, would also periodically visit Omaha for personal and professional activities. On those visits, Larson would sometimes stay at Judy's home. Judy attended Larson's wedding and also attended Larson's wife's funeral. Judy introduced Larson to her parents. Jordan testified that Larson was a close friend of Judy's and that he, Jordan, telephoned Larson upon Judy's eventual death.

In November 1999, Judy engaged an attorney to draft a trust document. That document named Judy as trustee and Larson as successor trustee. Jordan was the beneficiary under the trust. In early 2000, Judy sent a copy of the trust document to Larson. Larson testified that he notified Judy he was not in a position to serve as trustee given his distance from Omaha. Larson provided no legal advice to Judy concerning the trust document. There is no indication that Judy ever executed this trust document.

At the same time Judy sent Larson this draft trust, she also sent two other documents. One, exhibit 158, was a handwritten note dated January 27, 2000, purportedly from Judy to Larson. This note read in full:

> Gregg —
>
> I looked for you on the news — thought you might be handing out your business cards after that snowstorm interstate accident[.] Lots of broken bones & wrongful deaths — That was sick, wasn't it?

Anyway, when you can, look this over. You're the executor or Trustee or whatever, if I die.

Also, I finally got approved on the life insurance. You're the straight-up beneficiary on that. It's yours.

Gallner objected to exhibit 158 on best evidence grounds because the exhibit was a photocopy of the original note, which was no longer available. That objection was overruled.

The other document was the beneficiary designation on a $100,000 American Family Life Insurance Company policy (American Family policy). Apparently, Jordan had originally been the primary beneficiary, but in late November 1999, Judy changed the primary beneficiary to Larson, who was listed as a "family friend." The contingent beneficiary had been, and remained, Judy's father.

In November 2000, Judy obtained employment as an instructor at a community college in Omaha. She met with the coordinator of benefits and compensation at the beginning of her employment. Judy's benefits included a "UnumProvident" life insurance policy (Unum policy) and a 403(b) retirement account. The record shows that the 403(b) account was split equally between a Fidelity Investments account and a TIAA-CREF account.

On the Unum policy, Judy designated Larson as her primary beneficiary and Jordan as her contingent beneficiary. On the Fidelity Investments account, Judy designated Larson as primary beneficiary and Jordan as contingent beneficiary. Judy did not make any mention of a trust or trustee on either of Larson's designations. Larson is identified as "friend/atty" where the relationship is requested.

However, on the TIAA-CREF account, Judy designated Jordan as primary beneficiary and Larson as contingent beneficiary. Jordan was also designated as primary beneficiary for distribution of final pay and accumulated leave pay from the college, with Larson listed as contingent beneficiary.

In the fall of 2007, Judy engaged attorney Larry Forman to draft a last will and testament. The draft will and cover letter

were sent to Judy on October 11. The will designated the distribution of Judy's tangible personal property and "insurance policies and claims under such policies on such property" to Jordan, with the remainder of her estate to Jordan and Makenzie. The trustee and personal representative under this will was to be Larson. On its face, the will does not indicate any intention with regard to any life insurance policies, nor does it contemplate any trusts funded by life insurance policies or retirement accounts. The will does not name any of the assets or funds at issue in this case.

Forman testified at trial that Judy identified her assets to include her house, a First National Bank account, a "Provident Trust," her TIAA-CREF account, and shares of "Heinz and UP stock." It is not clear from the record whether the "Provident Trust" and the UnumProvident policy were in fact the same asset or two separate assets. In addition, Judy also indicated to Forman that she had a 401K account. In fact, Judy had a 403(b) retirement account; the parties appear to dispute whether Judy was referring to the 403(b) account when she indicated she had a 401K. Forman further testified that Judy did not mention any life insurance policies. In his testimony, Forman indicated that life insurance proceeds were not contemplated to be included in the estate as the will was drafted; rather, the testamentary trust created by the draft will included only the "residue and remainder of the estate." This will was apparently never executed.

Judy died on December 10, 2007. Jordan telephoned Larson that day to inform him of Judy's death. Larson testified that he spoke to Jordan twice on December 10 and once on December 11. Jordan agreed that they spoke twice on December 10, but testified they did not speak on December 11.

Jordan's and Larson's accounts of their conversations also differ. Jordan testified that Larson told him there were "policies" for which Larson was trustee and that Larson would be there to help Jordan take care of Makenzie. Larson, on the other hand, disputed that he mentioned any "policies" or

indicated that he was a trustee. Larson further noted that he was unaware of the existence of multiple policies, had in 2000 declined to serve as trustee, and at the time of these conversations, was unaware of the 2007 draft will.

Larson further claimed that he spoke to Gallner, who told him that Forman had drafted a will for Judy. Gallner denied having informed Larson of that fact and further noted that he disliked Larson such that he would not have conversed with him at all. The district court agreed that Larson did not learn of the will from Gallner. Rather, the district court found that Larson likely learned of the 2007 will from Judy.

The district court found Jordan's recollection of his conversation with Larson to be more credible. The district court concluded that the telephone conversation between Jordan and Larson created the inference that Larson knew Forman had been engaged to draft a will and that there might have been some duties for Larson and some "'policies'" to be held in trust.

Larson contacted Forman on December 11, 2007, in order to obtain a copy of the draft will. On December 13, a copy of that will was faxed to Larson.

As found by the district court, Larson eventually received $236,024.33 from the two life insurance policies and the retirement account. Upon learning that Larson was the beneficiary on these policies and the retirement account, Gallner, as personal representative of Judy's estate, demanded return of the funds. Gallner filed a complaint against Larson on May 2, 2008. Following a bench trial, the district court found for Larson and against Gallner. This appeal followed.

## III. ASSIGNMENTS OF ERROR

Gallner assigns that the district court erred in (1) determining that an express trust needed to be created in order to find Larson liable and in placing the burden to prove such trust on Gallner, (2) failing to impose a constructive trust, (3) failing to find that Larson deviated from the standard of care

and committed legal malpractice by accepting and retaining Judy's death benefit funds given his status as her attorney, and (4) admitting exhibit 158 into evidence.

## IV. STANDARD OF REVIEW

[1,2] An action for conversion sounds in law.[1] A district court's factual determination in a bench trial in an action at law has the same effect as a jury verdict and will not be set aside unless clearly wrong.[2]

[3-5] An action to impose a constructive trust sounds in equity.[3] An action to establish an oral trust also sounds in equity.[4] In an appeal of an equitable action, an appellate court tries factual questions de novo on the record, provided that where credible evidence is in conflict on a material issue of fact, the appellate court considers and may give weight to the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another.[5]

[6] A trial court has the discretion to determine the relevancy and admissibility of evidence, and such determinations will not be disturbed on appeal unless they constitute an abuse of that discretion.[6]

## V. ANALYSIS

On appeal, Gallner assigns four errors to the district court, which can be restated as two: that Larson breached some duty owed to Judy and, as a result, he should be liable for conversion or a constructive trust should be placed on the insurance proceeds, and that the district court erred in admitting

---

[1] *Krzycki v. Krzycki*, 284 Neb. 729, 824 N.W.2d 659 (2012).

[2] *Id.*

[3] *Eggleston v. Kovacich*, 274 Neb. 579, 742 N.W.2d 471 (2007).

[4] *Gasper v. Moss*, 204 Neb. 24, 281 N.W.2d 213 (1979).

[5] *Eggleston, supra* note 3.

[6] *In re Invol. Dissolution of Wiles Bros.*, 285 Neb. 920, 830 N.W.2d 474 (2013).

exhibit 158, the photocopy of the note purportedly from Judy to Larson.

### 1. Admissibility of Exhibit 158

We begin with Gallner's contention that the district court erred in overruling his best evidence objection to exhibit 158, because the disposition of this assignment of error impacts the remainder of our analysis. We review the district court's decision for an abuse of discretion.[7]

Exhibit 158 was the note from Judy to Larson informing Larson of the 1999 trust and the American Family insurance policy. The 2-page note itself is handwritten, but "Judy K. Hoffman" was preprinted across the top of the first page. In addition, the first page of the note was written on ruled paper, while the second page was not. Gallner argues that the photocopy of the note which was admitted into evidence was not the best evidence and that Larson should have had to produce the original. Larson explained that the original was not available, though he did not explain why.

Neb. Rev. Stat. § 27-1002 (Reissue 2008) provides:

> To prove the content of a writing, recording, or photograph, the original writing, recording, or photograph is required, except as otherwise provided in these rules or by Act of Congress or of the Legislature of the State of Nebraska or by other rules adopted by the Supreme Court of Nebraska.

Neb. Rev. Stat. § 27-1003 (Reissue 2008) provides: "A duplicate is admissible to the same extent as an original unless (1) a genuine question is raised as to the authenticity of the original or (2) in the circumstances it would be unfair to admit the duplicate in lieu of the original."

In this instance, Jordan testified that he believed the handwriting on the note to be Judy's. But Jordan also testified that Judy usually signed her name to her notes. He also commented upon the lack of lines on the second page of the note.

---

[7] See *id.*

Section 27-1003 allows the admissibility of a duplicate unless a genuine question is raised as to the authenticity of the original. Jordan's testimony does not reach this threshold. The fact that the note was unsigned does not seem unusual given that Judy's name was printed at the top of the page. And the lack of lines on the second page suggests that the second page was written on the reverse side of the first page. As such, the district court did not abuse its discretion in admitting exhibit 158.

## 2. Breach of Fiduciary Duty

### (a) Attorney/Client Relationship

Gallner also argues that Larson owed Judy a fiduciary duty as her attorney. Gallner asserts that Larson should have advised Judy to seek additional independent legal counsel upon learning that he had been named as a beneficiary on the American Family policy. Gallner further argues that this failure tainted Judy's designation of Larson as primary beneficiary on the Unum policy and the Fidelity Investments account. Gallner also contends that Larson committed professional malpractice resulting in a breach of Larson's fiduciary duty to Judy.

[7,8] Where a fiduciary or confidential relationship exists between the parties to a transaction, the burden of proof is upon the party holding the fiduciary or confidential relationship to establish the fairness, adequacy, and equity of the transaction.[8] This rule rests on the premise that it is the duty of the fiduciary to fully inform the other party of all the facts relating to the subject matter of the transaction which come to the knowledge of the fiduciary and which are material for the other party to know for the protection of that party's interest.[9]

---

[8] *Bauermeister v. McReynolds*, 254 Neb. 118, 575 N.W.2d 354 (1998).

[9] *Id.*

Both the Code of Professional Responsibility, which was in effect at the time this designation was made, and the now effective Nebraska Rules of Professional Conduct, address the issue of gifts from clients to attorneys. The code provides:

A lawyer should not suggest to his or her client that a gift be made to the lawyer or for the lawyer's benefit. If a lawyer accepts a gift from his or her client, the lawyer is peculiarly susceptible to the charge that he or she unduly influenced or overreached the client. If a client voluntarily offers to make a gift to his or her lawyer, the lawyer may accept the gift, but before doing so, the lawyer should urge that the client secure disinterested advice from an independent, competent person who is cognizant of all the circumstances. Other than in exceptional circumstances, a lawyer should insist that an instrument in which his or her client desires to name the lawyer beneficially be prepared by another lawyer selected by the client.[10]

The rules seem to impose an even stricter prohibition:

A lawyer shall not solicit any substantial gift from a client, including a testamentary gift, or prepare on behalf of a client an instrument giving the lawyer or person related to the lawyer any substantial gift unless the lawyer or other recipient of the gift is related to the client.[11]

But the comments to the rules further note:

A lawyer may accept a gift from a client, if the transaction meets general standards of fairness. For example, a simple gift such as a present given at a holiday or as a token of appreciation is permitted. If a client offers the lawyer a more substantial gift, paragraph (c) does not prohibit the lawyer from accepting it, although such a

---

[10] Canon 5, EC 5-5, of the Code of Professional Responsibility.

[11] Neb. Ct. R. of Prof. Cond. § 3-501.8(c).

gift may be voidable by the client under the doctrine of undue influence, which treats client gifts as presumptively fraudulent. In any event, due to concerns about overreaching and imposition on clients, a lawyer may not suggest that a substantial gift be made to the lawyer or for the lawyer's benefit, except where the lawyer is related to the client as set forth in paragraph (c).

. . . If effectuation of a substantial gift requires preparing a legal instrument such as a will or conveyance the client should have the detached advice that another lawyer can provide.[12]

The rules further provide guidance in interpretation:

The Rules of Professional Conduct are rules of reason. . . . Some of the Rules are imperatives, cast in the terms "shall" or "shall not." These define proper conduct for purposes of professional discipline. Others, generally cast in the term "may," are permissive and define areas under the Rules in which the lawyer has discretion to exercise professional judgment. . . . Many of the Comments use the term "should." Comments do not add obligations to the Rules but provide guidance for practicing in compliance with the Rules.

. . . .

. . . Violation of a Rule should not itself give rise to a cause of action against a lawyer nor should it create any presumption in such a case that a legal duty has been breached. . . . The Rules are designed to provide guidance to lawyers and to provide a structure for regulating conduct through disciplinary agencies. They are not designed to be a basis for civil liability. Furthermore, the purpose of the Rules can be subverted when they are invoked by opposing parties as procedural weapons. The fact that a Rule is a just basis for a lawyer's

---

[12] § 3-501.8, comments 6 and 7.

self-assessment, or for sanctioning a lawyer under the administration of a disciplinary authority, does not imply that an antagonist in a collateral proceeding or transaction has standing to seek enforcement of the Rule. Nevertheless, since the Rules do establish standards of conduct by lawyers, a lawyer's violation of a Rule may be evidence of breach of the applicable standard of conduct.[13]

[9] The record clearly shows that at the time Judy made Larson a beneficiary on the American Family policy, he was representing her in legal matters. It is axiomatic that the relationship between attorney and client is a fiduciary or confidential one,[14] and there is nothing that suggests the informality between Judy and Larson makes the relationship less so. We conclude that because Larson was Judy's attorney, he has the burden to show that the gift from Judy was fair.

We conclude that Larson has met his burden. As the district court noted, Judy was herself a lawyer. She did not suffer from any diminished mental capacity and was not elderly or incapacitated. She understood the consequences of her designation, as is evidenced by exhibit 158.

In addition, at the time Judy first contacted Larson regarding the American Family policy, she had already also engaged the services of another lawyer for estate planning purposes. She did not seek Larson's advice with regard to the drafting of the unexecuted trust or with respect to the change in beneficiary on the American Family policy. Larson did not seek the designation as beneficiary and was unaware of it until after the designation was made. And because Larson had done much uncompensated legal work for Judy, the designation seemed reasonable to Larson.

Of course, as counsel for Larson himself noted at oral arguments, it would have been preferable if Larson had simply

---

[13] Neb. Ct. R. of Prof. Cond. Scope, comments 14 and 20.

[14] *Gonzalez v. Union Pacific RR. Co.*, 282 Neb. 47, 803 N.W.2d 424 (2011).

told Judy to obtain independent legal advice regarding the designation. Indeed, that would be the best practice in such situations. But on these facts, Larson's failure to do so does not defeat the designation.

Moreover, we note that Gallner essentially argues that Larson violated the disciplinary rules applicable to Larson as an attorney, and therefore breached a duty to Judy. But as we note above, the rules are designed to provide guidance and "not designed to be a basis for civil liability."

[10] Gallner next asserts that Larson breached his fiduciary duty when he committed professional malpractice. In a civil action for legal malpractice, a plaintiff alleging professional negligence on the part of an attorney must prove three elements: (1) the attorney's employment, (2) the attorney's neglect of a reasonable duty, and (3) that such negligence resulted in and was the proximate cause of loss to the client.[15] When a plaintiff asserts attorney malpractice in a civil case, the plaintiff must show that he or she would have been successful in the underlying action but for the attorney's negligence.[16]

But there is simply no evidence of an employment relationship regarding estate matters upon which to base a malpractice claim. Larson plainly did not represent Judy on any estate planning matter. Nor can Gallner show a neglect of duty. We concluded above that Larson showed on these facts the designation of him as beneficiary was fair. Finally, Gallner cannot show any loss, because as noted above, Judy's father, not Jordan or the estate, was the contingent beneficiary on the American Family policy. We find no merit to this argument.

### (b) Trustee

Gallner also argues that Larson breached the fiduciary duty he owed to Judy as trustee of her trust. Gallner contends that

---

[15] *Harris v. O'Connor*, 287 Neb. 182, 842 N.W.2d 50 (2014).

[16] *Id.*

an oral trust was created for which Larson was the trustee and that the funds designated to Larson were actually given to him as trustee for Jordan and Makenzie.

But the evidence does not support the creation of a trust, oral or otherwise. There is evidence of a 1999 trust for which Larson was listed as trustee. But Larson testified that he informed Judy that he could not serve as trustee, and in fact, the 1999 trust was never executed. There is also evidence of a testamentary trust from a 2007 will for which Larson was listed as trustee. But that will was also never executed. Testimony from the attorney who drafted that will suggests that he was not fully informed of the existence of the assets now at issue in this appeal.

Finally, the designations themselves refute the assertion that Larson was given this property as a trustee. The American Family policy names the primary beneficiary as Larson, a "family friend." The Unum policy and Fidelity Investments account listed the primary beneficiary as Larson, a "friend/ atty." At the time Judy made Larson the beneficiary to the American Family policy, she also sent him the note informing him that he was the "straight-up beneficiary" and that "[i]t's yours."

And though the district court may have found that prior to Judy's death Larson was aware of the 2007 will, the district court also found that Jordan's

> recollection [that Larson informed him that Judy left a will/trust] is clearly not specific enough to support the conclusion that [Judy] had declared her intention to create a trust from the Unum policy and the Fidelity account. Larson's knowledge that [Judy] may have a will and he may be a trustee is not evidence of [Judy's] intent to create an oral trust with the Unum policy proceeds or the Fidelity account.

To the extent that the district court was making credibility determinations regarding Jordan's, Gallner's, and Larson's conflicting testimony, we defer to those determinations. And

upon our de novo review, we agree with the district court that the record supports the conclusion that there was no oral trust created in this case. Moreover, Larson engaged in no fraud or misrepresentation such that the imposition of a constructive trust would be appropriate or necessary. Nor did Larson unlawfully convert the property, as he was the designated beneficiary of the proceeds. There is no merit to Gallner's argument on this point.

Gallner's assignments of error are without merit.

## VI. CONCLUSION

The decision of the district court is affirmed.

AFFIRMED.

STEPHAN and MCCORMACK, JJ., not participating.