IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

MOON LAKE RANCH V. GAMBILL

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

MOON LAKE RANCH, LLC, AND JUDY L. MILLER, APPELLEES AND CROSS-APPELLANTS,

V.

RICHARD AND SHIRLEY GAMBILL, HUSBAND AND WIFE, APPELLANTS AND CROSS-APPELLEES,
AND GUDGEL LAND CORP., APPELLEE.

Filed February 21, 2017.    No. A-15-785.

Appeal from the District Court for Brown County: MARK D. KOZISEK, Judge. Affirmed.

Rodney J. Palmer, of Palmer Law Group, L.L.C., for appellants.

Jason B. Bottlinger, of Bottlinger Law, L.L.C., for appellees.

MOORE, Chief Judge, and RIEDMANN and BISHOP, Judges.

BISHOP, Judge.

## I. INTRODUCTION

Richard Gambill (Richard) and Shirley Gambill (Shirley) live and ranch in Brown County, Nebraska. The "Trail Road" runs across the Gambills' land, connecting Moon Lake Avenue to land owned by Moon Lake Ranch, LLC. The Trail Road also runs over land owned by Gudgel Land Corp. and Judy L. Miller. In a summary judgment order, the district court for Brown County granted Moon Lake Ranch and Miller a prescriptive easement over the Gambills' and Gudgel Land Corp.'s land for use of the Trail Road. The Gambills appeal; Moon Lake Ranch and Miller cross-appeal the district court's failure to grant them a permanent injunction enjoining the Gambills from interfering in their use of the Trail Road. We affirm.

- 1 -

## II. FACTUAL BACKGROUND

The Trail Road connects ranch land owned by Moon Lake Ranch and Miller to Moon Lake Road, now known as Moon Lake Avenue; the Trail Road is not paved or graveled. The Trail Road runs northwest from Moon Lake Avenue and crosses land owned by the Gudgel Land Corporation, the Gambills, Miller, and Moon Lake Ranch (in that order when traveling northwest from Moon Lake Avenue). The Gambills purchased their property at issue in 2001 from William (Bill) and Blanche Gudgel.

Moon Lake Ranch is owned by three sisters: Pam Hill (Pam), Kay Hill (Kay), and Gayleen Hill (Gayleen). Their father, Harold Hill (Harold), purchased the relevant land in 1964 (section 35). Harold also leased other property (section 3) in the 1960's from Jesse and Ivy McDaniel, which he purchased in 1973. Harold died in 2010, at which time his daughters formed Moon Lake Ranch.

The Hill family has used the Trail Road to access their land since 1964. In her affidavit, Pam said, "We [the Hills] have used the Trail Road continuously and without interruption for more than the last 49 years. I have personally and openly used the Trail Road each and every year for the last 45 years to access our land." Pam stated that she and her family had never asked permission to use the road, hidden their use of the road, and did not rely on the rights of others to use the road. Furthermore, she asserted that the surrounding landowners "know or should know that we used it, they know I have used it, and they have acquiesced in our use until recently." Pam testified in her deposition that she and her father would meet the previous owners of the Gambills' property when using the Trail Road. She stated they saw Bill Gudgel regularly when going in and out on the Trail Road when Bill was fixing fence, and there were times when she and her father would be fixing fence and would meet Bill there, with Blanche Gudgel there sometimes. In February 2013, Pam and her family received a letter from the attorney for the Gambills. This letter threatened criminal prosecution if the Hills continued to use the Trail Road. None of the Hills have used the Trail Road since receiving the letter.

According to Richard Keller's deposition and affidavit, his family formed A & K Ranch, Inc., in the 1960's; he bought into it in 1991. The corporation leases section 35 of the Hill property, and Keller's son, Bradley, leases the Hill property immediately adjacent to the south (section 3). Keller traveled the Trail Road "[m]any times[,]" with the first time occurring in 1993 to deliver "a handful of cows or bulls." At that time, Jeff Staub rented bulls from Keller, and Staub was renting the land from the Hills. Keller traveled over the Trail Road every year until 2013 to deliver bulls or cows. Keller had taken over the Hill lease in 2005. Prior to Staub leasing the land, Keller recalled helping Warren Dorsey drive cows to the Hill land in 1992, crossing over Bill and Blanche Gudgel's property "[v]irtually right down the trail because that's kind of the - that's the main way in there. That's where the gates are and the - that's just the low ground you can go over."

As to use of the Trail Road by Miller, who owns property over which the road crosses, her affidavit stated that she and her parents used the Trail Road

> [C]ontinuously, openly and without interruption whenever there was any need to do so. We claimed a right to use the Trail Road that was not dependent on anyone else's right to use it. We did not ask for permission, and none was given, though the owners of the land over

which the Trail Road crossed knew of our use and acquiesced to our use, and our use was adverse to them.

Miller's father, Marvin Lake, purchased the land from Miller's grandmother's estate in 1989; it was subsequently transferred to Miller who became the sole owner of the property after the passing of her husband and mother. Miller stated that the Trail Road crossed land owned by her, the Gambills, and Gudgel Land Corporation, and that the lands are separately fenced along the perimeter with gates where the Trail Road crosses boundaries. She stated, "Historically, and prior to February 2013, these gates did not restrict travel across the road."

Doug O'Hare stated in his deposition that he, his father, and his brother formed DCK Partnership in 1980 or 1981. In addition to their own farm and ranch operation, DCK leased land from Lavern Lake and now her daughter, Miller. O'Hare stated in his affidavit that he and his family used the Trail Road to access the leased land two to three times per week from May to October every year since the 1960's. They used the Trail Road sometimes more frequently to check the land, check on and care for cattle, and to perform repairs. O'Hare, his family, and their operating entities have used the Trail Road without restriction since the 1960's to access the leased land. O'Hare stated he never asked permission, nor had an agreement, to use the Trail Road, and that his family and operating entities have used it continuously and without interruption for more than the last 15 years, and in fact, claimed a right to use the Trail Road since before 1970. O'Hare stated their use has been open and that surrounding land owners have known of the use and acquiesced to that use until February 2013 when the letter was sent by the Gambills to stop using it. O'Hare stated that the Trail Road was the "most direct, safest and best route to access our leased land from [Moon Lake] Avenue."

The Gambills acquired the property at issue from the Gudgels in 2001. The Gambills' son, Brad Gambill, manages his parents' ranch. The first year they owned the property, Richard placed "No Hunting" and "No Trespassing" signs at the beginning of Moon Lake Road and at each gate along the Trail Road. According to Richard, he had permitted various neighbors to travel the Trail Road; however, "Notice was given on February 15, 2013[,] to all neighbors and people who have used this trail to cease and permission was revoked. Notice was also published in the newspaper on February 20, 2013."

Barbara Anderson, the daughter of the Gudgels, stated that her family owned the ranch from 1949 to 2001, at which time it was sold to the Gambills. Anderson alleged that she helped her father with ranch work when the Hills claim to have used the Trail Road. Anderson stated that she never saw any of the Hill family use the Trail Road.

## III. PROCEDURAL BACKGROUND

Moon Lake Ranch and Miller raised two claims for relief in their amended complaint: a declaratory judgment establishing a prescriptive easement over the Trail Road and a permanent injunction enjoining the Gambills from interfering with their use of the Trail Road. Moon Lake Ranch and Miller filed a motion for summary judgment, as did the Gambills. At the June 9, 2015, hearing on the summary judgment motions, the court would not consider the Gambills' motion for summary judgment because they "failed to comply with [Neb. Rev. Stat.] § 25-1332, Local Court

Rule 8-10, the Progression Order and Second Order Expanding Progression Deadlines[.]" The court stated that "[t]he evidence adduced by Gambill at the hearing will only be considered by the Court as evidence in opposition to plaintiffs' motion for summary judgment."

In its July 27, 2015, order, the district court concluded:

Moon Lake Ranch[,] LLC, and its predecessors in title, tenants and their employees, have used the Trail Road adversely, under a claim of right, continuously and uninterrupted, openly and notoriously, exclusively, with the knowledge and acquiescence of the defendants and their predecessors in title for the full prescriptive period of ten years commencing in 1964 and the use continued until February 2013 when the Gambills served notice upon them that they would be criminally prosecuted if they continued to use the Trail Road.

The district court reached the same conclusion as to Miller, noting that her prescriptive period commenced in the 1960's and no later than 1969. As a result, the district court ordered that Moon Lake Ranch and Miller had a private prescriptive easement for ingress and egress over and across the Gambills' and Gudgel Land Corporation's land measuring 15 feet on either side of the center line of the Trail Road for vehicle access and 75 feet on either side to drive cattle. The court taxed the Gambills $5,122.20 in costs, ordered each party to pay their own remaining costs, and concluded with the statement, "Any other claims for relief by any party, expressed or implied, are overruled and denied." The Gambills timely appealed.

## IV. ASSIGNMENTS OF ERROR

The Gambills' 17 assignments of error are condensed and restated as follows: the district court erred by (1) excluding certain evidence at the hearing on the motion for summary judgment; (2) granting a prescriptive easement over the Trail Road, contrary to the law and facts of the case; and (3) improperly assessing costs.

On cross-appeal, Moon Lake Ranch and Miller assign error to the district court for failing to enter a permanent injunction enjoining the Gambills from interfering in their use of the Trail Road.

## V. STANDARD OF REVIEW

In reviewing a grant of summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment was granted and gives that party the benefit of all reasonable inferences deducible from the evidence. *Coffey v. Planet Group, Inc.*, 287 Neb. 834, 845 N.W.2d 255 (2014). An appellate court will affirm a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from the facts and that the moving party is entitled to judgment as a matter of law. *SFI Ltd. Partnership 8 v. Carroll*, 288 Neb. 698, 851 N.W.2d 82 (2014).

In proceedings where the Nebraska Evidence Rules apply, the Nebraska Evidence Rules govern admitting evidence; judicial discretion is involved only when the Rules make discretion a factor in determining admissibility. *In re Involuntary Dissolution of Wiles Bros., Inc.*, 285 Neb.

920, 830 N.W.2d 474 (2013). A trial court has discretion to determine the relevancy and admissibility of evidence, and such determinations will not be disturbed on appeal unless they constitute an abuse of that discretion. *Gallner v. Larson*, 291 Neb. 205, 865 N.W.2d 95 (2015). A judicial abuse of discretion means that the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and a just result. *Matthews v. Matthews*, 267 Neb. 604, 676 N.W.2d 42 (2004).

## VI. ANALYSIS

### 1. JURISDICTION

Before reaching the legal issues presented for review, it is the duty of an appellate court to determine whether it has jurisdiction over the matter before it. *Schlake v. Schlake*, 294 Neb. 755, 885 N.W.2d 15 (2016). Thus, we first address the argument made by Moon Lake Ranch and Miller that the district court's July 27, 2015, order is not a final, appealable order. They claim the order does not dispose of their request for a permanent injunction, and therefore, this court lacks jurisdiction over this appeal.

In their amended complaint, Moon Lake Ranch and Miller requested a declaratory judgment to establish their rights to the Trail Road by prescriptive easement and also requested a permanent injunction enjoining the Gambills and Gudgel Land Corporation from interfering with the use of their lands and the Trail Road. Although successful in obtaining the prescriptive easement, Moon Lake Ranch and Miller argue that their claim for a permanent injunction remains pending. We disagree. Although the order does not specifically address the request for a permanent injunction, the last sentence of the order states: "[a]ny other claims for relief by any party, expressed or implied, are overruled and denied." Accordingly, the request for a permanent injunction was denied. The district court's July 27, 2015, order is a final, appealable order, and we have jurisdiction over this appeal. Moon Lake Ranch and Miller have properly preserved their challenge to the denial of their request for a permanent injunction in their cross-appeal, which we address later.

### 2. EXCLUDED EVIDENCE

The Gambills assign as error various evidentiary rulings made by the district court. As we consider their arguments, we bear in mind that a trial court has discretion to determine the relevancy and admissibility of evidence, and such determinations will not be disturbed on appeal unless they constitute an abuse of that discretion. See *Gallner v. Larson, supra*.

#### (a) Exhibit 19

Exhibit 19 is Anderson's affidavit; the district court excluded paragraphs 6 through 9 of the affidavit for lack of foundation. The admitted portions of Anderson's affidavit reveal that she is the daughter of William and Blanche Gudgel, and that her family owned the land from 1949 to 2001 when it was sold to the Gambills. Anderson lived on the Gudgel ranch and actively helped her parents on the ranch; she was familiar with the Trail Road. During "her time on the ranch and having been out in the pastures involved," Anderson never saw any of the Hill family use "the old trail."

Paragraphs 6 through 9 of Anderson's affidavit assert: that the only people who occasionally used the trail were [Jess and Iva McDaniel] (paragraph 6); that the Gudgels used the trail primarily for windmill maintenance on Gudgel property (paragraph 7); that the county performed no maintenance on the trail while the Gudgels owned the land (paragraph 8); and that the property has been vacant since the McDaniels died in 1975 (paragraph 9). The Gambills contend these statements "cover a time from 1949 - 2001 and are based upon [Anderson's] personal experience and knowledge having lived and worked on the ranch," brief for appellant at 12, and excluding this evidence was an abuse of discretion. We disagree.

With regard to affidavits used in summary judgment proceedings, Neb. Rev. Stat. § 25-1334 (Reissue 2016) states that "[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Statements in affidavits of opinion, belief, or conclusions of law are of no effect. *Lamprecht v. Schluntz*, 23 Neb. App. 335, 870 N.W.2d 646 (2015).

Anderson's broad assertions as to actions or inactions by other people in paragraphs 6 through 9 exceed her personal knowledge. Anderson did not provide any information on how she would know who was using the Trail Road or when it was being used; for example, there is no indication that Anderson was out on the Trail Road herself in any particular frequency. Further, Anderson does not state what years she lived at her family's ranch, or how she would know who was or was not using the Trail Road at any given time, why it was used, or whether it was being maintained by others. Anderson also does not explain how she would know that the Hill property had been vacant since the McDaniels died in 1975, especially in light of other evidence showing that the land was being leased. It was not an abuse of discretion for the district court to exclude these portions of Anderson's affidavit on foundational grounds.

(b) Exhibits 12, 13, and 14

The Gambills argue that certain sections of exhibit 12 (Richard's deposition), exhibit 13 (Brad's deposition), and exhibit 14 (Shirley's deposition) were improperly excluded because "no objection was made by [Moon Lake Ranch and Miller] during the depositions and it was stipulated the deposition [sic] were taken by the Nebraska Rules of Discovery." Brief for appellant at 12. That is the entirety of the Gambills' argument as to these alleged evidentiary errors.

Under the Nebraska Court Rules of Discovery in Civil Cases, any part or all of a deposition, so far as admissible under the Nebraska Evidence Rules applied as though the witness were then present and testifying, may be used against any party who was present or represented at the taking of the deposition. Neb. Ct. R. Disc. § 6-332(a) (rev. 2016). Objections may be made at the trial or hearing to receiving in evidence any deposition or part thereof for any reason which would require the exclusion of the evidence if the witness were then present and testifying. See Neb. Ct. R. Disc. § 6-332(b). Section 6-332(d)(3)(A) provides that objections to the competency of a witness or to the competency or relevancy of testimony are not waived by failure to make them before or during the taking of the deposition, unless the ground of the objection is one which might have been obviated or removed if presented at that time. Further, § 6-332(d)(3)(B) provides that objections

to the form of questions must be made at the deposition or are otherwise waived if the error could have been obviated, removed, or cured if promptly presented.

Regarding Exhibit 12 (Richard's deposition), the district court sustained a foundation objection to the testimony at 122:7-15. At this point in Richard's deposition, he was asked whether anyone else in his family had given permission (presumably to use the Trail Road), and Richard responded, "I think Brad gave the O'Hares permission in the wintertime to bring that hay out of there. . . . And they waited 'til it was wet." It was not an abuse of discretion for the district court to exclude this statement for lack of foundation despite the failure to object to it during the deposition. Richard's lack of foundation for the statement could not have been obviated or removed at the time of the deposition.

Regarding Exhibit 13 (Brad's deposition), the district court sustained a foundation and hearsay objection to the testimony at 44:3 to 45:9. At this point in Brad's deposition, he was asked whether he knew how long Jeff Staub rented the Hill land when he was working for the O'Hares; Brad responded that "Cindy texted me" and indicated it was 1996 or 1997 until 2006 "best they can recall." Brad was asked who rented the "Hill ground now, do you know?" Brad responded he assumed Richard Keller had it from 2006. Again, the failure to object during the deposition does not prevent the district court from excluding this evidence for summary judgment purposes since the lack of foundation could not have been obviated or removed at the time of the deposition, and hearsay objections are not subject to the rule to obviate, remove or cure at the time of the deposition.

Regarding Exhibit 14 (Shirley's deposition), the district court sustained a foundation and hearsay objection to the testimony at 7:22 to 8:23. At this point in Shirley's deposition, she was asked about exhibit 24, and she identified it as "the letter that Blanche and Barbara wrote." (We note that it is exhibit 23 in our record which appears to be the pertinent letter; exhibit 24 is a map.) When Shirley was asked if she had requested that Blanche and Barbara create exhibit 24, Shirley said she was not sure, but that Blanche said one of the Hills had asked Blanche to write out a statement saying they (the Hills) used the land continually, and Blanche told them no, "and then she and Barbara then wrote this up." Once again, the district court did not abuse its discretion in excluding this deposition evidence for the same reasons set forth regarding Exhibit 13.

(c) Exhibits 20 and 23

The Gambills argue that the district court erred in excluding Exhibits 20 and 23 for "lack of a proper notary." Brief for appellant at 13.

An affidavit is a written or printed declaration or statement of facts, made voluntarily, and confirmed by the oath or affirmation of the party making it, taken before a person having authority to administer such oath or affirmation. *Moyer v. Nebraska Dept. of Motor Vehicles*, 275 Neb. 688, 747 N.W.2d 924 (2008). An affidavit must bear on its face, by the certificate of the officer before whom it is taken, evidence that it was duly sworn to by the party making the same. *Id.* An affidavit does not, however, require a notary to confirm the truth of the facts stated within the affidavit; rather, the certificate, known as a jurat, confirms only that the affiant appeared before a notary, attested to the truth of his or her statements, and signed the affidavit. *Id.* Oaths to affidavits ordinarily are not required to be administered with any particular ceremony, but the affiant must

perform some corporal act before the officer whereby the affiant consciously takes upon himself or herself the obligation of an oath. *Id.*

While the formality required for an affidavit oath is minimal, there must be some indication of an oath on the face of the document if there is no evidence that a formal, verbal oath was given by the notary or other official who witnessed the affidavit. See *Moore v. Peterson*, 218 Neb. 615, 358 N.W.2d 193 (1984). Without such evidence, the corporal act element is missing and the document is not a true affidavit. See *Moyer v. Nebraska Dept. of Motor Vehicles*, *supra*; *State v. Howard*, 184 Neb. 274, 167 N.W.2d 80 (1969). Some statement to the equivalent of "subscribed and sworn before" has been sufficient. See *id.*

Exhibit 20 is a typed letter dated April 20, 2014, addressed "To Whom it may concern," and has a signature purported to be that of Galen Zurcher. The letter states that in the summer of 1967, Zurcher helped the Harold Hill Ranch put up hay during the season and that the only route he knew to that ranch was "by traveling through the Ted Buechle Ranch." The letter displays a Wyoming notary stamp and the notary's signature just below Zurcher's signature. Nothing labels the letter as an affidavit, and nothing shows that the document was subscribed and sworn before the notary. The affidavit does not show on its face, by the certificate of the officer before whom it was taken, evidence that it was duly sworn to by Zurcher. See *Moyer v. Nebraska Dept. of Motor Vehicles, supra.*

Exhibit 23 is a handwritten letter dated January 13, 2014, and is addressed "To Whom It May Concern." It has two signatures: Blanche Gudgel and Barbara Anderson. It is signed and stamped by a Nebraska notary, and the notary does attest as to the identities of the persons signing the document. However, the affidavit does not show on its face, by the certificate of the officer before whom it was taken, evidence that it was duly sworn to by either Blanche or Anderson. See *Moyer v. Nebraska Dept. of Motor Vehicles, supra.* See, also, *State ex rel. Wagner v. Gilbane Bldg. Co.*, 280 Neb. 223, 786 N.W.2d 330 (2010) (unsworn summaries of facts or arguments are inadmissible as evidence).

The Gambills rely on *Valeriano-Cruz v. Neth,* 14 Neb. App. 855, 716 N.W.2d 765 (2006), to support admission of exhibits 20 and 23. However, we note that the affidavit in that case contained the language "Subscribed and sworn to before me" preceding the notary public's signature and stamp. *Id.* at 857, 716 N.W.2d at 767. In the present matter, neither exhibit 20 or 23 bear any indication that the signatures affirmed the writing under oath. There is no statement such as "subscribed and sworn to before me" on either document like there was in *Valeriano-Cruz v. Neth*, *supra*. We conclude the district court properly excluded exhibits 20 and 23.

(d) Paragraph 5 of Exhibit 22

Exhibit 22 is Richard's affidavit. The court sustained the foundation objection to the portion of paragraph 5 of the affidavit which pertained to Harold Hill's use of the road. The entirety of paragraph 5 states, "Harold Hill never used this trail road; Kenny Hill used the trail road twice with permission in 2004 and 2006 and he has never seen any of the Hill girls - Kay, Pam or Gaylene - use the trail road since 2001."

The Gambills contend that the district court erred in sustaining the objection for lack of foundation because "Mr. Gambill owned and lived on the ranch over which this trail existed, used

the trail to get to his windmills and other pastures, was in the best position to observe the trail on a daily basis and was in a primary position to observe and authenticate who did and did not travel across his land . . . He more than anybody would be the best witness to the trail's use." Brief for appellant at 12-13.

It was not an abuse of discretion to exclude for lack of foundation Richard's assertion that Harold Hill never used the Trail Road. Richard would have no personal knowledge of anyone's use prior to the Gambills' purchase of the Gudgels' property in 2001, and even after that point in time, Richard could not properly attest to another person's use or lack of use of the road unless he had 24-hour surveillance of the relevant portions of the Trail Road. While Richard could attest to not seeing certain people on the Trail Road when he was in a position to make such an observation, he lacked foundation to discuss Harold's usage of the road to access property he owned or leased since the 1960's. As discussed previously, in motions for summary judgment, "supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." § 25-1334. To be effective, evidence opposing the rendition of a summary judgment must be made on personal knowledge and show affirmatively that the affiant is competent to testify to the matters stated therein. *Holt Cty. Sch. Dist. No. 0025 v. Dixon*, 8 Neb. App. 390, 594 N.W.2d 659 (1999). The court did not abuse its discretion in excluding Richard's statement that Harold never used the Trail Road.

### 3. SUMMARY JUDGMENT GRANTING PRESCRIPTIVE EASEMENT OVER TRAIL ROAD

Restated, the Gambills argue that summary judgment should only be granted when there is no genuine issue of material fact, and that the Hills' and Miller's use of the Trail Road is a contested fact. Further, they contend the evidence does not support a prescriptive easement.

An appellate court will affirm a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from the facts and that the moving party is entitled to judgment as a matter of law. *SFI Ltd. Partnership 8 v. Carroll*, 288 Neb. 698, 851 N.W.2d 82 (2014). We therefore consider the law pertaining to prescriptive easements as applied to the uncontested facts.

"The law of prescriptive easements has been called a 'tangled mass of weeds.' Nevertheless, the core principles of the doctrine are well established in Nebraska." *Feloney v. Baye*, 283 Neb. 972, 976, 815 N.W.2d 160, 164 (2012). An easement is an interest in land owned by another person, consisting in the right to use or control the land, or an area above or below it, for a specific limited purpose. *Id*. A claimant may acquire an easement through prescription. *Id*. The use and enjoyment that will establish an easement through prescription are substantially the same in quality and characteristics as the adverse possession that will give title to real estate, but there are some differences between the two doctrines. *Id*. A party claiming a prescriptive easement must show that its use was exclusive, adverse, under a claim of right, continuous and uninterrupted, and open and notorious for the full 10-year prescriptive period. *Id*. To prove a prescriptive right to an easement, all the elements of prescriptive use must be generally established by clear,

convincing, and satisfactory evidence. *Teadtke v. Havranek*, 279 Neb. 284, 777 N.W.2d 810 (2010).

The prevailing rule is that where a claimant has shown open, visible, continuous, and unmolested use of land for a period of time sufficient to acquire an easement by adverse user, the use will be presumed to be under a claim of right. *Svoboda v. Johnson*, 204 Neb. 57, 281 N.W.2d 892 (1979). The owner of the servient estate, in order to avoid the acquisition of the easement by prescription, has the burden of rebutting the prescription by showing the use to be permissive. *Id.* Finally, it is presumed that every landowner knows the condition and status of their land and if anyone enters into open and notorious possession of an easement therein, under a claim of right, the owner is charged with knowledge thereof. *Id.*

The district court found that the Trail Road was used by the Hills since 1964 to access the Moon Lake Ranch property for the purpose of inspecting and caring for their land and their cattle, and to check fences and conduct repairs. Also, A & K Ranch leased part of Moon Lake Ranch's property, and its shareholder, Richard Keller, used the Trail Road every year since 1993. Also, A & K Ranch has run its own cattle on Moon Lake Ranch property since 2001 or 2002, and access to the rented ground by A & K Ranch owners and employees was over the Trail Road one to three times per week from May to November and two to three times per year from November to May. Access to the rented ground via the Trail Road was necessary for windmill repairs, tank work, cedar tree removal and upkeep of the land. The court noted that Warren Dorsey and Jeri Hoffman had their cows on the Moon Lake Ranch property in 1992 and that Keller helped Dorsey drive cattle to the Moon Lake Ranch property over the Trail Road that year.

As to Miller, the district court found that the Miller property had been leased to the O'Hare family entities since the 1960's, and they used the Trail Road two to three times per week, sometimes more, from May to October to check on and care for cattle and to perform repairs.

The district court concluded that the "evidence establishes a use of the Trail Road by the general public and in particular, use by the Hills and their tenants since at least 1964 and use by Miller and her tenants since the 1960's, no latter [sic] than 1969." The court then considered the evidence under each element necessary for a prescriptive easement, as discussed next.

(a) Adverse Use and Under Claim of Right

The district court relied on *Svoboda v. Johnson, supra*, for the proposition that if a person proves uninterrupted and open use for the necessary period without evidence to explain how the use began, the presumption is raised that the use is adverse and under claim of right, and the burden is on the owner of the land to show that the use was by license, agreement, or permission. Further, if such use has been for the requisite time open, notorious, visible, uninterrupted, and undisputed under claim of right to such owner, the owner is charged with knowledge of such use and the owner's acquiescence in the use is implied. *Id.* We also note that the law does not require that possession shall be evidenced by a complete enclosure, nor by persons remaining continuously upon the land and constantly from day to day performing acts of ownership thereon. *Biegert v. Dudgeon*, 213 Neb. 617, 330 N.W.2d 897 (1983). It is sufficient if the land is used continuously for the purposes to which it may be in its nature adapted. *Id.*

The district court stated that Keller "pretty well summed up the situation in his deposition." Keller's deposition revealed that cattle were driven down the Trail Road because that was the "main way in there." The court found that the Trail Road was used as early as 1964 to access the Moon Lake Ranch property and as early as the 1960's to access the Miller property, and that no one sought permission for that use. "They all used the Trail Road when needed and without interruption," until February 2013, at which time the "Gambills sent notices to their neighbors that they would be criminally prosecuted if they continued to use the Trail Road." The court found that the evidence established that the Gudgels (owners preceding Gambills' purchase in 2001) had actual knowledge of the Hills' use of the Trail Road. The court concluded that Moon Lake Ranch and Miller and their predecessors in title have used the Trail Road adversely and under claim of right since at least 1964.

Notably, since the Gambills did not purchase their land at issue until 2001, they could not personally attest to who used the Trail Road, or when, or for what purpose prior to that time. Their only evidence relevant to the prescriptive period came from Anderson, whose family owned the property from 1949 to 2001. However, Anderson stated that during "her time on the ranch," she never saw any of the Hill family use "the old trail." Even setting aside Anderson's lack of specificity as to the timeframe and frequency she would have been in a position to observe the Trail Road on any regular basis, the fact that she never saw any of the Hill family on the Trail Road does not put into dispute the claims of uninterrupted and open use of the Trail Road by the various tenants who leased the Hill or Miller land commencing in the 1960's.

(b) Continuous and Uninterrupted

Continuous means a possession for the 10-year period which is uninterrupted or stretches on without break or interruption. *Wanha v. Long*, 255 Neb. 849, 587 N.W.2d 531 (1998). Also, use of predecessors in title may be tacked on to a plaintiff's use to meet the 10-year requirement. *Fischer v. Grinsbergs*, 198 Neb. 329, 252 N.W.2d 619 (1977). Possession of a tract of land by an agent or tenant under adverse holding inures to the benefit of the adverse holder. Personal occupation in such a case is unnecessary. *Dormer v. Dreith*, 145 Neb. 742, 18 N.W.2d 94 (1945).

The court concluded the evidence established continuous and uninterrupted use of the Trail Road since as early as 1964 by the Hills and no later than 1969 by the Millers, and their tenants and predecessors, to access Moon Lake Ranch property or Miller property to perform windmill repairs, tank work, cedar tree removal, upkeep of the land, caring for cattle, and checking fences. There was no evidence to dispute this other than the broad assertions by the Gambills or Anderson which we previously addressed and determined that the district court correctly concluded were not admissible.

The Gambills argue that any use between 2001 and 2015 could not have been continuous and uninterrupted because the gates on the Trail Road were locked during hunting season and because the Gambills posted "No Hunting" and "No Trespassing" signs at the gates. However, the Gambills' actions between 2001 and 2015 does not affect the outcome of this case because by that time, as the district court correctly concluded, the prescriptive period had already passed.

- 11 -

### (c) Open and Notorious

Conduct which occurs within plain view constitutes open and notorious conduct. See *Werner v. Schardt*, 222 Neb. 186, 382 N.W.2d 357 (1986). There is no evidence to contradict that the use of the Trail Road across the Gambill and Gudgel land was open, visible, and established well before 2001. As noted by the district court, the evidence established use of the Trail Road by various people "two to three times a week during the grazing season and less frequently during the winter months." Finally, it is presumed that every landowner knows the condition and status of their land and if anyone enters into open and notorious possession of an easement therein, under a claim of right, the owner is charged with knowledge thereof. *Svoboda v. Johnson*, 204 Neb. 57, 281 N.W.2d 892 (1979). Because the use was open, visible, and established before 2001, the Gambills are charged with knowledge of the easement when they purchased the land.

### (d) Exclusive

The word exclusive in reference to a prescriptive easement does not mean that there must be use only by one person but, rather, means that the use cannot be dependent upon a similar right in others. *Werner v. Schardt, supra*. The district court found that the evidence did not indicate that the Hills' or Miller's use of the Trail Road was in any way dependent upon the right of others to use the road; each party's right to use the road was independent of any claim to its use by any other person.

### (e) 10-Year Prescriptive Period

The district court found that the Hills and their tenants, and Miller and her tenants, established all elements of title by prescription to an easement over the Trail Road by clear, convincing and satisfactory evidence. The court noted that the Gambills' evidence in opposition focused "on the here and now. They ignore what transpired starting in 1964."

The Gambills argue that the Hills could not use the Trail Road for the required 10 years because Moon Lake Ranch did not come into legal existence until 2011. The evidence established that Harold Hill purchased or leased the land at issue in the 1960's, and when he died in 2010, ownership passed to his daughters who formed Moon Lake Ranch. As already discussed, an easement through prescription had already been acquired well before this time, and the evidence also established that the use of the Trail Road continued in the same manner after the Gambills purchased the Gudgels' land in 2001 up until the Gambills threatened criminal prosecution of those continuing to use the Trail Road in 2013.

### (f) Permissive Use

Once the use is established as adverse and under a claim of right, the claimant prevails unless the owner of the land proves by a preponderance of the evidence that the use was by license, agreement, or permission. *Werner v. Schardt, supra*. Permissive use is not adverse. *Lake Arrowhead, Inc. v. Jolliffe*, 263 Neb. 354, 639 N.W.2d 905 (2002). However, one who purchases land burdened with an open and visible easement is charged with notice of the same, and the estate he purchases is servient to the easement. *Johnson v. Mays*, 216 Neb. 890, 346 N.W.2d 401 (1984).

The Gambills rely on *Gerberding v. Schnakenberg*, 216 Neb. 200, 343 N.W.2d 62 (1984), for the proposition that when the owner of a property has opened or maintained a right of way for his own use and the claimant appears to be in common with that use, the presumption arises that the use is permissive. The foundation for this presumption is the likelihood that the owner is acting neighborly as opposed to acquiescing in a tortious trespass over his land. *Feloney v. Baye*, 283 Neb. 972, 815 N.W.2d 160 (2012). However, the Gambills offered no evidence that the Gudgels established the Trail Road for a certain use and that the Hills or Millers or their tenants then used the Trail Road for that same common purpose.

The Gambills also rely on *Feloney v. Baye, supra*, for the proposition that when a claimant uses a neighbor's driveway or roadway without interfering with the owners' use or driveway itself, the use is permissive. The Gambills assert that Richard permitted others to use the Trail Road and then withdrew that permission. However, as already noted, any permission granted after the Gambills purchased the land in 2001 was too late. The prescriptive period had already passed.

As concluded by the district court, no evidence was received to indicate that the original use of the Trail Road in the 1960's was by license, agreement, or permission. We agree with the district court that the evidence adduced by the Gambills pertains to agreement or permission possibly granted at the earliest in 2001, "more than 35 years after the prescriptive use began."

The evidence established that Moon Lake Ranch and Miller, their predecessors in title, tenants and employees, have used the Trail Road adversely, under a claim of right, continuously and uninterrupted, openly and notoriously, exclusively, with the knowledge and acquiescence of the Gambills and their predecessors in title for the full prescriptive period of 10 years commencing in the 1960's, and no later than 1969, and that the use continued until February 2013 when the Gambills served notice that they would criminally prosecute those continuing to use the Trail Road. The Gambills produced no evidence to create any question of fact and failed to overcome the presumption of adverse use and claim of right by Moon Lake Ranch and Miller to use the Trail Road. Summary judgment granting the prescriptive easement was not in error.

## 4. COURT COSTS

The Gambills assert in the assignment of errors section of their brief that "[t]he Trial Court erred in erroneously, without evidence, assessing costs unilaterally research [sic] from 'JUSTICE'." Brief for appellant at 8. However, their brief does not separately set forth an argument in support of this assigned error. An alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error to be considered by an appellate court. *Pierce v. Landmark Management Group, Inc.*, 293 Neb. 890, 880 N.W.2d 885 (2016). Therefore, we will not consider this assigned error.

## 5. CROSS-APPEAL

Moon Lake Ranch and Miller assign that the district court erred by failing to grant their request for a permanent injunction enjoining the Gambills from interfering with their use of the Trail Road. Their argument focuses on the Gambills' threat of criminal prosecution if they continued to use the Trail Road, and that this "conduct diminished, restricted and impeded their

ability to use and substantially enjoy their rights of possession and property[.]" Brief for appellee on cross-appeal at 42.

An injunction is an extraordinary remedy and ordinarily should not be granted except in a clear case where there is actual and substantial injury. *Lambert v. Holmberg*, 271 Neb. 443, 712 N.W.2d 268 (2006). Such a remedy should not be granted unless the right is clear, the damage is irreparable, and the remedy at law is inadequate to prevent a failure of justice. *Id.* An adequate remedy at law means a remedy which is plain and complete and as practical and efficient to the ends of justice and its prompt administration as the remedy in equity. *Standard Oil Co. v. O'Hare*, 122 Neb. 89, 239 N.W. 467 (1931).

The only basis argued for a permanent injunction relates to the Gambills' threat of criminal prosecution if Moon Lake Ranch or Miller continued to use the Trail Road. Moon Lake Ranch and Miller now have a legally recognized easement to use the Trail Road over the Gambills' property. An adequate remedy at law resolved the issue, and there is no longer a threat of actual and substantial injury. The district court did not err in its denial of the permanent injunction requested by Moon Lake Ranch and Miller.

## VII. CONCLUSION

The pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from the facts with regard to the granting of a prescriptive easement over the Trail Road, and with regard to the district court's denial of Moon Lake Ranch's and Miller's request for a permanent injunction. Accordingly, we affirm the district court's order in all respects.

AFFIRMED.